**UNITED HATTERS, CAP AND MILLINERY WORKERS INTERNATIONAL UNION, AFL-CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SOUTHLAND MANUFACTURING CORP., Respondent.**

**Nos. 20086, 20235.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 19, 1966.

Decided Feb. 23, 1967.

Mr. Michael Gottesman, Washington, D. C., with whom Mr. Elliot Bredhoff, Washington, D. C., was on the brief, for petitioner in No. 20086.

Mr. Eugene B. Granof, Washington, D. C., Attorney, National Labor Relations Board, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Elliott Moore, Attorney, National Labor Relations Board, were on the brief, for petitioner in No. 20235 and respondent in No. 20086.

Mr. Morris J. Milstein, as president and main stockholder of Southland Manufacturing Corp., argued on behalf of respondent in No. 20235.

Before FAHY, McGOWAN and LEVENTHAL, Circuit Judges.

FAHY, Circuit Judge:

In No. 20235, the NLRB petitions this court to enforce its order against Southland Manufacturing Corporation, respondent. In No. 20086, the Union seeks modification and, as modified, enforcement. The corporation would have the court set aside the order.

The order was the result of unfair labor practice proceedings involving relations of the corporation with its employees at its plant in Mayaguez, Puerto Rico, where it manufactured hats and caps under contracts with the Defense Department. There were extensive hearings before a Trial Examiner, eventuating in findings by him, and thereafter by the Board, that the corporation had engaged in unfair labor practices in violation of Sections 8(a) (1), 8(a) (3), and 8(a) (5) of the National Labor Relations Act.[1] The remedial order, in addition to cease and desist provisions, called affirmatively for reinstatement of certain named employees in the event the company, which at the time of the order had ceased operations, resumed operations, with reimbursement for any loss of earnings suffered as a result of the discrimination against them, the reimbursement to run to the date in February 1965 when the corporation shut

down its plant. The corporation was also ordered to make whole employees who had been locked out from December 7, 1964, to January 11, 1965. The Board expressly reserved the right to modify these backpay and reinstatement provisions if this were made necessary by a change of conditions in the future. Finally, in addition to formal and usual provisions, the order called upon the corporation to cease and desist from refusing to bargain with the Union specifically.

> by unilaterally formulating and awarding merit wage increases, or by temporarily shutting down its plant for the purpose of disparaging and undermining the Union as the statutory bargaining representative of its employees,

and, affirmatively, "if and when the Respondent reopens its plant, bargain, upon request, with" the Union "as the exclusive representative of all employees in the appropriate unit described in the Trial Examiner's Decision, and embody any understanding reached in a signed agreement."

The findings of the Board, upon the basis of which the order rests, as well as the supporting findings of the Trial Examiner, are amply supported by substantial evidence considering the record as a whole. National Labor Relations Act, § 10(e), 61 Stat. 147, as amended 29 U.S.C. § 160(e). Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; International Union of United Brewery, etc. v. N. L. R. B., 111 U.S.App.D.C. 383, 298 F.2d 297, 301, cert. denied, Gulf Bottlers Inc. v. N. L. R. B., 369 U.S. 843, 82 S.Ct. 875, 7 L.Ed.2d 847; Joy Silk Mills, Inc. v. N. L. R. B., 87 U.S.App. D.C. 360, 366, 185 F.2d 732, 738, cert. denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350. Accordingly the Board order, unless it should be reconsidered in part for reasons advanced by the Union, now to be discussed, must be approved and enforced.

1. 61 Stat. 140, as amended, 29 U.S.C. § 158(a) (1), (3), (5).

The Union urges that the Board erred in departing from the recommendation of the Trial Examiner that backpay should run to the date of actual reinstatement or, in the case of employees who could not be reinstated because of insufficient work, "to the date of * * * placement on a preferential hiring list," rather than, as the Board provided, to the date in February 1965 when the plant was shut down.

■ We have noted that the Board reserved the right to modify the backpay and reinstatement provisions if changed conditions in the future made this necessary. In its brief before us now the Board refers to this reservation in support of its position that the backpay provision need not be reconsidered. In view of this and mindful too of the discretion residing in the Board in formulating remedial orders, we leave the matter as the Board left it. We may not validly insist that the Board do more than it has done in regard to backpay.

The Union raises further and related objections to the Decision and Order, namely, (1) the failure of the Board to find, as the Trial Examiner found, that the corporation violated Section 8(a) (5) and (1) of the Act by refusing the Union's request in February 1965 to bargain concerning any future decision to cease operations and concerning the effect of such a decision on the employees, and (2) the failure of the Board in this connection to require the corporation, as the Trial Examiner would have done, to cease and desist from refusing to bargain by "unilaterally closing or reopening the plant, or arriving at a future decision to close or reopen the installation, without prior notification to and consultation with the Union."

Standing upon its finding that in other respects the corporation had violated Section 8(a) (5) and (1), the Board stated in its Decision, "we find it unnecessary to decide whether Respondent otherwise violated Section 8(a) (5) as found by the Trial Examiner." Our question, therefore, is whether it was necessary for the Board so to decide, and, if it should do so, whether it should specify this particular matter as a subject to be bargained about, as the Union urges.

■ Considering the history of the case, in the course of which the corporation had used shutdowns as a weapon against the organizing efforts of the employees, it would seem that the finding sought by the Union could appropriately have been made, if the Board were persuaded by the evidence. Moreover, the Union's position that such a finding should lead to the specific provision in the order which it suggests, is reasonable; that is, that the corporation should know, as should the employees, that the corporation must address itself to this particular problem in the bargaining process. The refusal of the Board to point up this matter, as requested, might lead the corporation to conclude it need not bargain about it. Having said this much, however, we must add that what we think would be reasonable is not decisive. The question is whether we must require the Board to do what it has knowingly decided it need not do. The Board has issued an order in general terms requiring the corporation to bargain in good faith. Less specificity does not absolve the corporation from bargaining in the respect now considered should the economic decisions referred to arise again. We defer to the Board in the absence of greater certainty on our own part as to the necessity for a more specific order. The order is comprehensive; the Board was fully cognizant of the whole situation; it did not overlook the particular point. Though we assume more specificity might have been desirable, we cannot, in face of the Board's decision to the contrary, say that more was essential to effectuate the policies of the Act. Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620–621, 86 S.Ct. 1018, 16 L.Ed.2d 131; Fibreboard Paper Prods. Corp. v. N. L. R. B., 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233; N. L. R. B. v. Seven-Up Bottling Co., 344 U.S. 344, 346, 73 S.Ct. 287, 97 L.Ed. 377;

Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 194, 61 S.Ct. 845, 85 L.Ed. 1271.

In No. 20235, the order of the Board is enforced.

In No. 20086, the petition is denied.