NATIONAL LABOR RELATIONS BOARD *v.* SEVEN-
UP BOTTLING COMPANY OF MIAMI, INC.

No. 217. Argued December 19, 1952.—Decided January 12, 1953.

*Mozart G. Ratner* argued the cause for petitioner.
With him on the brief were *Acting Solicitor General Stern,
George J. Bott* and *David P. Findling.*

*Frank A. Constangy* argued the cause for respondent.
With him on the brief were *Marion A. Prowell* and *Albert
B. Bernstein.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Acting under § 10 (c) of the Labor Management Relations Act, 1947 (the Taft-Hartley Act), 61 Stat. 136, 147, 29 U. S. C. (Supp. IV) § 160 (c), the National Labor Relations Board ordered the reinstatement of eleven discriminatorily discharged employees of the Seven-Up Bottling Company, with back pay "to be computed upon a quarterly basis in the manner established by the Board in *F. W. Woolworth Company.*" 92 N. L. R. B. 1622, 1640. In the *Woolworth* case, 90 N. L. R. B. 289, the Board said:

> "The public interest in discouraging obstacles to industrial peace requires that we seek to bring about, in unfair labor practice cases, 'a restoration of the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination.' In order that this end may be effectively accomplished through the medium of reinstatement coupled with back pay, we shall order, in the case before us and in future cases, that the loss of pay be computed on the basis of each separate calendar quarter or portion thereof during the period from the Respondent's discriminatory action to the date of a proper offer of reinstatement. The quarterly periods, hereinafter called 'quarters,' shall begin with the first day of January, April, July, and October. Loss of pay shall be determined by deducting from a sum equal to that which [the employee] would normally have earned for each such quarter or portion thereof, [his] net earnings, if any, in other employment during that period. Earnings in one particular quarter shall have no effect upon the back-pay liability for any other quarter." 90 N. L. R. B., at 292–293.

In the proceeding in which the Board sought enforcement of the order against the Seven-Up Bottling Com-

pany, the Court of Appeals sustained the claim of the Company that the *Woolworth* formula could not be applied against it: "The employee is entitled to be made whole, but no more. The employees here involved were not compensated on a quarterly basis. We see no sufficient reason to so compute their back pay during suspension. . . . There is nothing to indicate that the conditions apprehended by the Board in the Woolworth case, exist here." 196 F. 2d 424, 427–428. Accordingly, the court modified the Board's order so that back pay would be awarded on the basis of the entire period during which an employee was denied reemployment in violation of the Act rather than on a quarterly basis. Since the general method of computing back pay is obviously a matter of importance in the administration of the Act, we brought the case here. 344 U. S. 811.

Section 10 (c) of the Taft-Hartley Act, under which the Board made its award, derives unchanged, so far as is now relevant, from the National Labor Relations (Wagner) Act. 49 Stat. 449, 454. It charges the Board with the task of devising remedies to effectuate the policies of the Act. Of course the remedies must be functions of the purposes to be accomplished, and in making back pay awards, the Board operates under a further limitation. It must have regard for considerations governing the mitigation of damages; it must, that is, heed "the importance of taking fair account, in a civilized legal system, of every socially desirable factor in the final judgment." *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 198. Subject to these limitations, however, the power, which is a broad discretionary one, is for the Board to wield, not for the courts. In fashioning remedies to undo the effects of violations of the Act, the Board must draw on enlightenment gained from experience. When the Board, "in the exercise of its informed discretion," makes an order of restoration by way of back pay, the order "should

stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Virginia Electric & Power Co.* v. *Labor Board,* 319 U. S. 533, 540. The *Woolworth* formula, as a general method of computation, is, under this test, proof against judicial challenge.

The Board's very first published order awarded as back pay wages which would normally have been earned "during the period from the date of . . . discharge to the date of [an] offer of reinstatement . . . less the amount . . . earned subsequent to discharge . . . ." *Pennsylvania Greyhound Lines, Inc.,* 1 N. L. R. B. 1, 51 (1935), enforced *sub nom. Labor Board* v. *Pennsylvania Greyhound Lines, Inc.,* 303 U. S. 261. For fifteen years the Board followed the practice it had laid down in that case and calculated back pay on the basis of the entire period between discharge and offer of reinstatement. In 1950, in *F. W. Woolworth Company, supra,* the Board said: "The cumulative experience of many years discloses that this form of remedial provision falls short of effectuating the basic purposes and policies of the Act." 90 N. L. R. B., at 291. The Board considered that its *Pennsylvania Greyhound* formula for computing back pay adversely affected "the companion remedy of reinstatement." When an employee, sometime after discharge, obtained a better paying job than the one he was discharged from, it became profitable for the employer to delay an offer of reinstatement as long as possible, since every day the employee put in on the better paying job reduced back pay liability. Again, the old formula, in the same circumstances, put added pressure on the employee to waive his right to reinstatement, since by doing so he could terminate the running of back pay and prevent the continuing reduction of the sum coming to him. To avoid these consequences the

Board laid down its new method of computation. 90 N. L. R. B., at 292–293.

It is not for us to weigh these or countervailing considerations. Nor should we require the Board to make a quantitative appraisal of the relevant factors, assuming the unlikely, that such an appraisal is feasible. As is true of many comparable judgments by those who are steeped in the actual workings of these specialized matters, the Board's conclusions may "express an intuition of experience which outruns analysis and sums up many unnamed and tangled impressions . . ."; and they are none the worse for it. *Chicago, Burlington & Quincy R. Co.* v. *Babcock,* 204 U. S. 585, 598. It is as true of the Labor Board as it was of the agency in the *Babcock* case that "[t]he Board was created for the purpose of using its judgment and its knowledge." *Ibid.*

It will not be denied that the Board may be mindful of the practical interplay of two remedies, back pay and reinstatement, both within the scope of its authority. Surely it may so fashion one remedy that it complements, rather than conflicts with, another. It is the business of the Board to give coordinated effect to the policies of the Act. We prefer to deal with these realities and to avoid entering into the bog of logomachy, as we are invited to, by debate about what is "remedial" and what is "punitive." It seems more profitable to stick closely to the direction of the Act by considering what order does, as this does, and what order does not, bear appropriate relation to the policies of the Act. Cf. *Labor Board* v. *Gullett Gin Co.,* 340 U. S. 361. Of course, *Republic Steel Corp.* v. *Labor Board,* 311 U. S. 7, dealt with a different situation, and its holding remains undisturbed.

It is urged, however, that no evidence in this record supports this back pay order; that the Board's formula and the reasons it assigned for adopting it do not rest on data which the Board has derived in the course of the pro-

ceedings before us. But in devising a remedy the Board is not confined to the record of a particular proceeding. "Cumulative experience" begets understanding and insight by which judgments not objectively demonstrable are validated or qualified or invalidated. The constant process of trial and error, on a wider and fuller scale than a single adversary litigation permits, differentiates perhaps more than anything else the administrative from the judicial process. "[T]he relation of remedy to policy is peculiarly a matter for administrative competence . . . ." *Phelps Dodge Corp.* v. *Labor Board, supra,* 313 U. S., at 194. That competence could not be exercised if in fashioning remedies the administrative agency were restricted to considering only what was before it in a single proceeding.

This is not to say that the Board may apply a remedy it has worked out on the basis of its experience, without regard to circumstances which may make its application to a particular situation oppressive and therefore not calculated to effectuate a policy of the Act. The Company in this case maintains that it operates a seasonal business, that its employees may earn three times as much in the first and fourth quarters of a year as in the second and third, and that a quarterly calculation of back pay would in this context be obviously unjust. The Board suggests that it will be time enough to deal with such special facts in this case if the Board and the Company cannot agree on the fair application of the *Woolworth* formula after the order is sustained. But in case of such disagreement, the Company can be heard as of right on the issue it now raises only in the course of contempt proceedings and at the risk involved in them. We do not think contempt proceedings are appropriate for the settlement of such an issue. *Phelps Dodge Corp.* v. *Labor Board, supra,* 313 U. S., at 200. Indeed, the Board's pre-*Woolworth* formula was adapted to varying

circumstances as a result of proceedings had before the Board prior to the issuance of orders. See, *e. g., Crossett Lumber Company,* 8 N. L. R. B. 440, 496–498; *Gullett Gin Company, Inc.,* 83 N. L. R. B. 1, 2, n. 4, .enforced *sub nom. Labor Board* v. *Gullett Gin Co., supra.* We assume that the *Woolworth* formula will be applied in like manner.

In any event, this aspect of the problem is not now properly here. The Company never made before the Board the objection it now bases on the seasonal nature of its business. Section 10 (e) of the Act, 61 Stat. 136, 147, 148, 29 U. S. C. (Supp. IV) § 160 (e), provides: "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." In its Exception XXII to the Intermediate Report of the Trial Examiner, the Company objected that the recommendations as to the remedy were contrary to, and unsupported by, the evidence and contrary to law. This is not adequate notice that the Company intends to press the specific issue it now raises. *Marshall Field & Co.* v. *Labor Board,* 318 U. S. 253. The Company did not urge this issue either before the Board or in the Court of Appeals. No extraordinary circumstances are present such as would justify permitting the issue to be raised here for the first time.

The Company contends, finally, that though it might have been within the authority of the Board to devise the *Woolworth* formula under the language of the National Labor Relations Act, the fact that that language was re-enacted while the Board adhered to its pre-*Woolworth* formula has deprived the Board of power to depart from the latter. We are told that Congress studied with unusual care the case law which had developed under the statute Congress was revising and reenacting by the Labor

Management Relations Act, and that it adopted new language whenever it desired results other than the ones reached by the cases. We are cited to *Labor Board* v. *Gullett Gin Co., supra,* and asked to conclude as a general proposition that whenever Congress reenacted without change provisions of the National Labor Relations Act it thereby froze administrative decisions rendered under those provisions. *Gullett Gin* carries no such generalization. Having held that the Board's practice of failing to deduct unemployment compensation payments in the calculation of back pay awards did not go beyond its powers, we said in that case that our holding was supported by the fact that Congress had reenacted the relevant part of § 10 (c) of the National Labor Relations Act with what we took to be notice of this practice. We thought Congress could be said to have agreed that the Board was acting within the authority Congress meant it to have.

Assuming Congress was aware of the Board's pre-*Woolworth* practice of calculating back pay on the basis of the entire period from discharge to offer of reinstatement, we could say here, as we did in *Gullett Gin,* that Congress by its reenactment indicated its agreement that the Board's practice was authorized. That leads us nowhere on the present issue, though it is only this far that what we said in *Gullett Gin* can lead us. In that case as here, again assuming notice, if Congress was satisfied that the Board was acting within its powers, the thing for it to do was what it did—reenact without change. In that case as here—though, of course, we had no occasion to say so in that case—if Congress had been more than satisfied with the Board's practice, if it had wanted to be certain that the Board would not in future profit by its experience, it would have had to do more than it did; it would have had to change the language of the statute so as to take from the Board the discretionary

power to mould remedies suited to practical needs which we had declared the Board to have and which the Board was asserting and exercising. We cannot infer an intent to withdraw the grant of such power from what is at most a silent approval of specific exercises of it.

We hold that the Board's order is to be enforced.

*Reversed.*

MR. JUSTICE DOUGLAS, dissenting.

I agree that the Board has the power to use the *Woolworth* formula in computing back pay awards. But I do not think that its application in every case, regardless of the circumstances, is in accord with the policy of the Act. In the usual case computation of back pay awards on a quarterly basis will serve the purpose of making the employee whole; and it may even be necessary to effectuate the remedy of reinstatement. On the other hand the use of the formula may in some cases produce an inequitable result.

Where, as here, an employer's business fluctuates, the employee's income will not be constant. He will earn more in one month than the next, more in one quarter than the next. Seasonal variations in the business may result in a high total income for one quarter and a low total for the next. A discharged employee, who secures other employment at a normal and constant rate of income, may achieve a yearly rate of pay substantially equal to that of his regular job. That apparently is this case. If, therefore, back pay is computed in this case on a quarterly basis, the employee will probably receive an award in excess of the amount of income he would have earned had he not been discharged. For the quarter during which he would have earned a large amount, he would be awarded the difference between that amount and the lower amount he earned at the outside employment. For

a quarter during which his income would have been low he would receive no back pay, provided his outside employment yielded him more than his old job. The net result will probably be that this employee will receive a total amount of earned income, plus back pay, which exceeds what he would have earned at his regular job. Such a result is both inequitable and unwarranted. The Board should not be allowed to use this formula for back pay when in a given case it glaringly works an injustice. There are exceptions to most general rules; and the Board should be the guardian of the exceptions, as well as the formula itself.

MR. JUSTICE MINTON, with whom THE CHIEF JUSTICE joins, dissenting.

It seems to us that we enter a "bog of logomachy" when we start to retract what we plainly said twelve years ago in *Republic Steel Corp.* v. *Labor Board,* 311 U. S. 7, and reaffirmed as late as 1951 in *Labor Board* v. *Gullett Gin Co.,* 340 U. S. 361. The statute was the same then as now.

In the *Republic Steel* case, the Board had ordered the company to deduct from the back pay due wrongfully discharged employees the amounts they had received on "work relief" projects and to pay the amounts so deducted to the United States Government. On review only of the question of the payment of these amounts to the Government, this Court held that there was no authority for the payment to the Government of the sums the employees had earned on work relief. Such payment to the Government had nothing to do with making the employees whole and only punished the employer.

In construing the pertinent provisions of the statute in this case, the Court said:

> "[The Board] can direct the employer to bargain with those who appear to be the chosen representa-

tives of the employees and it can require that such employees as have been discharged in violation of the Act be reinstated with back pay. All these measures relate to the protection of the employees and the redress of their grievances, not to the redress of any supposed public injury after the employees have been made secure in their right of collective bargaining and have been made whole.

"As the sole basis for the claim of authority to go further and to demand payments to governments, the Board relies on the language of § 10 (c) which provides that if upon evidence the Board finds that the person against whom the complaint is lodged has engaged in an unfair labor practice, the Board shall issue an order—'requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act.'

"This language should be construed in harmony with the spirit and remedial purposes of the Act. We do not think that Congress intended to vest in the Board a virtually unlimited discretion to devise punitive measures, and thus to prescribe penalties or fines which the Board may think would effectuate the policies of the Act. We have said that 'this authority to order affirmative action does not go so far as to confer a punitive jurisdiction enabling the Board to inflict upon the employer any penalty it may choose because he is engaged in unfair labor practices even though the Board be of the opinion that the policies of the Act might be effectuated by such an order.' We have said that the power to command affirmative action is remedial, not punitive. *Consolidated Edison Co.* v. *National Labor Relations*

*Board,* 305 U. S. 197, 235, 236. See, also, *National Labor Relations Board* v. *Pennsylvania Greyhound Lines,* 303 U. S. 261, 267, 268. We adhere to that construction." 311 U. S. 7, 11–12.

As we understand the decisions of this Court up to now, they have all held that the power of the Board to effectuate the policies of the Act is remedial and is for the purpose of making the employee whole and not of punishing the employer. It is conceded and cannot be denied that the rule heretofore applied by the Board in calculating back pay does not fail to make the employee whole.

The rule undoubtedly derives from the common-law rule of damages for the breach by the employer of a contract of employment. The measure of damages is what an employee would have earned if he had not been wrongfully discharged, less what he did earn during the period of the breach. *American Trading Co.* v. *Steele,* 274 F. 774, 782; 5 Williston, Contracts (rev. ed. 1937), § 1358; McCormick on Damages (1935) §§ 158, 160.

By the quarterly calculation approved by the Court in the instant case, not only may a wrongfully discharged employee often receive as back pay a greater amount than he would have received had he worked at his regular job, but the employer must pay more than he would have had to pay if he had had the employee's services during the period. Thus, both of the avowed purposes of the rule which this Court has held must guide the Board in allowing back pay have been violated, namely, the employee is made more than whole, and the employer has accordingly been penalized.

The employees here were not employed or paid on a quarterly basis. The statute does not require that they be reimbursed on a quarterly basis. The statute as interpreted by this Court requires the employees to be made whole. This rule, as heretofore applied, will always do

that. The employee is entitled to no more, the employer to no less.

This Court having laid down this rule, the Board having consistently applied it for over twelve years, and Congress having considered and completely overhauled the Act in 1947 without changing this provision of the statute with its long interpretation, we think it has become part of the administrative practice that Congress should change if it is to be changed. *Helvering* v. *R. J. Reynolds Tobacco Co.*, 306 U. S. 110, 114; *Taft* v. *Commissioner*, 304 U. S. 351, 357; *Hartley* v. *Commissioner*, 295 U. S. 216, 220; *Stairs* v. *Peaslee*, 18 How. 521, 526.