## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## HALBEN CHEMICAL CO., Inc., Respondent.

### No. 290, Docket 25993.

United States Court of Appeals Second Circuit.

Argued April 12, 1960.

Decided May 9, 1960.

---

190

William J. Avrutis, Atty., National Labor Relations Board, Washington, D. C. (Stuart Rothman, Gen. Counsel, Thomas J. McDermott, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Duane B. Beeson, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Leonard S. Kimmell, Mineola, N. Y. (Kimmell & Kimmell, and Jacob B. Gersten, Mineola, N. Y., on the brief), for respondent.

Before SWAN, CLARK and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

This is one of the growing list of cases in which the courts are required to pass on the propriety of the Board's imposing the so-called Brown-Olds remedy of dues reimbursement, 115 N.L.R.B. 594 (1956), for unfair labor practices. See Morrison-Knudsen Co. v. N. L. R. B., 2 Cir., 275 F.2d 914, and Building Material Teamsters, Local 282 etc. v. N. L. R. B., 2 Cir., 275 F.2d 909, and cases in other circuits there cited; N. L. R. B. v. Local 294, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 2 Cir., 279 F.2d 83; and N. L. R. B. v. Revere Metal Art Co., and Amalgamated Union Local 5, UAW Independent, 2 Cir., 280 F.2d 96.

The employer does not contest enforcement of the portions of the Board's order that require it to cease recognition of Local 14149 unless and until the Local shall have demonstrated majority status pursuant to a Board conducted election. But it contends that imposition of the Brown-Olds remedy in this case is arbitrary. Little more than a recital of the facts is needed to show that, save as to a single employee, the employer is right.

Respondent is a small manufacturer of deodorants and moth repellants. It has one plant and from 8 to 15 employees. These had been represented by Warehouse and Processing Workers Union, Local 284, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, with whom respondent had a collective bargaining agreement. In October 1957, Godineaux, an employee, filed a decertification petition alleging that Local 284 no longer represented the employees; on February 4, 1958 the Board issued a decision, Halben Chemical Co., Case No. 2–RD–382, wherein it found that a question concerning representation had arisen and directed an election to determine whether the employees desired to be represented by Local 284.

While the decertification petition was pending, respondent's employees went out on strike, on December 9, 1957. Respondent's labor counsel endeavored to communicate with representatives of Local 284 but none were available. Upon learning from respondent's president that the picket signs identified the strike as being under the auspices of the Association of Catholic Trade Unionists, counsel communicated with the attorney for the Association, who informed him that Local 14149, Oil, Chemical and Atomic Workers International Union, AFL–CIO, was the union interested. Counsel met with Roach, vice president of the Local, and another officer. He asked the officers to prove that the Local represented a majority of the employees. They exhibited authorization cards from all the employees except one full-time employee, Alicia, and a part-time employee. The strike had been called during the employer's busy season. In view of this and of the signed cards shown to counsel, respondent entered into an agreement on December 11, 1957, with Local 14149, recognizing the union as exclusive bargaining representative, agreeing to engage in collective bargaining and providing for an immediate return of the employees to work.

Early in February, 1958, the secretary-treasurer of Local 284 asked respondent to abide by its contract with that Local and pay up an accumulated arrearage in dues. A similar protest was made to company counsel. The company took the position it had had no alternative save to sign up with Local 14149 because its limited resources would not permit it to withstand the strike. Local 284 filed charges late in February, 1958, alleging that the company had violated § 8(a) (1), (2) and (3), 29 U.S.C.A. § 158(a) (1–3) by recognizing Local 14149 in the face of a pending decertification petition and an agreement with Local 284. Meanwhile the negotiations with Local 14149 progressed. By April, 1958 the company and the Local had agreed on a contract recognizing the Local as the exclusive bargaining agent, requiring employees to become members of the union within 30 days after the date of their employment or the effective date of the agreement, whichever was later, and to remain as such, and providing for checkoff of initiation fees and dues. Although Local 14149 declined to sign the contract on advice of counsel until the pending election was held, the company started making the checkoff about April 8, 1958 and continued this for a month. Employees were advised on May 7 that they would "no longer be required to become or remain members of Local 14149" as a condition of employment, that there would be no further checkoffs, that "Any employee who may desire to may, of course, continue to remain a member of Local 14149 and pay his dues directly to that union. However, it is strictly voluntary on his part. No one is required to in order to work in this plant."

On June 13, 1958, the Regional Director approved a settlement agreement between the company, Local 14149 and Local 284. The company agreed to cease and desist from giving effect to its contract with Local 14149 or from recognizing that union unless and until Local 14149 was certified by the Board, and

from assisting or contributing support to it. The company also agreed to reimburse its employees for all dues, assessments and initiation fees paid to Local 14149 from December 11, 1957, the date the collective bargaining agreements became effective. This was done.

As questions arose between the company and its employees, Roach, vice-president of Local 14149, communicated with respondent about them. These included a request that respondent adhere to the terms of the April, 1958 understanding on retroactive pay increases and vacation and holiday pay, and a dispute as to whether election day was to be a paid holiday. Roach was in the plant several times to talk with Godineaux, shop steward for Local 14149, and the company used Godineaux in connection with disciplinary matters and the processing of grievances. In April Alicia had said to respondent's president he had been told by Godineaux "that if he didn't join the union he better not come to work," and the president "told him not to look for any trouble, to join the union, I liked him and wanted him to be with me." After the notice was posted, Alicia told the president he felt "funny about it"; the president replied "Don't look for any trouble and go along with everybody." This Alicia incident assumes large proportions in the examiner's intermediate report. Respondent's president testified that he "pretty well knew" the employees were paying dues to the union after the settlement agreement was executed, and "there was nothing I could do about it." "A couple of times" a representative of Local 284 sought access to the plant; respondent's president "told him that I had a contract with a different union, to leave me alone."

On October 9, 1958, Local 284 again filed charges of violation of § 8(a) (1) and (3) against the company; no charges were filed against Local 14149. On February 27, 1959, the Regional Director withdrew his approval of the settlement agreement and issued a consolidated complaint. This led to the order here sought to be enforced.

Here, as in Morrison-Knudsen, supra, where we excised a reimbursement order in a discrimination case, the remedy is imposed solely against the employer, although the funds are, or at least were, in the hands of the union. On the other hand, as in N. L. R. B. v. Revere Art Metal Co., supra, where we upheld the reimbursement remedy, this case deals with a union claimed to have been unlawfully assisted by the employer. However, in Revere the employer did not contest the order and our opinion recognized that cases might arise where imposition of the remedy would be arbitrary even when the unfair labor practice was allegedly unlawful assistance to a union or an unlawful union security agreement. This is such a case.

There is no evidence of coercion of respondent's employees. An overwhelming majority indicated in December, 1959, that they desired to be represented by Local 14149, and there is no evidence that this desire had abated by June, 1958. All dues paid prior to June 13, 1958 have already been refunded pursuant to the settlement agreement. Before that date the employees had been notified that payment of dues and initiation fees to Local 14149 was wholly voluntary. With the single exception of Alicia, there is no evidence that payments by anyone were anything but that, and reimbursement may be ordered with respect to Alicia without including all respondent's employees. See Local 357, International Brotherhood of Teamsters v. N. L. R. B., D.C.Cir., 275 F.2d 646; Morrison-Knudsen Co. v. N. L. R. B., 9 Cir., 276 F.2d 63. We consider that, on such a record, to require this employer to reimburse all its employees for sums paid directly by them to the union is "oppressive and therefore not calculated to effectuate a policy of the Act." N. L. R. B. v. Seven-Up Bottling Co., 1953, 344 U.S. 344, 349, 73 S.Ct. 287, 290, 97 L.Ed. 377.

We therefore eliminate paragraph 2b from the Board's order except as to employee Alicia and grant enforcement to the order as thus modified.