NATIONAL LABOR RELATIONS BOARD, Applicant-Appellant,

v.

Kenneth R. WILLIAMS, Respondent-Appellee,

and

Teamsters General Local No. 200, Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Intervenor-Appellee,

NATIONAL LABOR RELATIONS BOARD, Applicant-Appellant,

v.

Robert SHAW, Respondent-Appellee,

and

Teamsters General Local No. 200, Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Intervenor-Appellee.

Nos. 16436–16437.

United States Court of Appeals Seventh Circuit.

May 21, 1968.

Marcel Mallet-Prevost, Asst. General Counsel, Solomon I. Hirsh, Gregory L. Hellrung, Attys., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, N.L.R.B., Washington, D. C., for appellant.

Robert K. Drummond, David W. Croysdale, Richard M. Goldberg, John S. Williamson, Jr., Milwaukee, Wis., for appellee; Goldberg, Previant & Uelmen, Milwaukee, Wis., of counsel.

Before KNOCH, Senior Circuit Judge, and CASTLE and FAIRCHILD, Circuit Judges.

CASTLE, Circuit Judge.

These appeals are from orders of the District Court denying the National Labor Relations Board's applications, made pursuant to Section 11(2) of the National Labor Relations Act, as amended,[1] for enforcement of a subpoena duces tecum directed to Kenneth R. Williams, respondent-appellee in Appeal No. 16346, and a subpoena ad testificandum directed to Robert Shaw, respondent-appellee in Appeal No. 16347. Williams and Shaw are, respectively, the president and the vice-president of S & W Transfer, Inc.

The record discloses that the employees of S & W in an April 24, 1967, Board conducted representation election rejected the Union[2] as their collective bargaining representative. Following the election S & W filed unfair labor practices charges against the Union alleging that picketing which preceded and followed the election violated Section 8 (b) (7) (B) of the Act. The Board issued a complaint and notice of hearing, and the Union filed an answer denying the charges. A hearing was scheduled for May 24, 1967. On May 22 S & W filed a request to withdraw its charges. The request was refused by the Board's Regional Director on the basis that approval of the request would not effectuate the policies of the Act. On May 23 upon application of the Board's General Counsel pursuant to Section 11(1) of the Act, the Board issued the subpoenas directing the respondents-appellees to appear and testify before the examiner at the scheduled hearing, and directing Williams to produce a copy of "the existing collective-bargaining agreement" between S & W and the Union.[3] On May 24, the date of the hearing, the Union filed an amended answer withdrawing its previous denials of allegations and charges contained in the complaint. Thus, in effect, the Union admitted the

1. Hereinafter referred to as the "Act".

2. Teamsters General Local No. 200, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Referred to herein as the "Union".

3. General Counsel "was informed and believed" that S & W and the Union had entered into a collective-bargaining agreement on or about May 18, 1967.

Section 8(b) (7) (B) violation charged,[4] and the sole issue remaining before the examiner was the fashioning of an appropriate remedy. On the same day counsel for S & W advised that neither Williams nor Shaw would appear to testify before the examiner or produce the requested document. The hearing was continued to allow General Counsel to make applications for court enforcement of the subpoenas.

After a hearing on the enforcement applications and the answers filed by the respondents denying that the evidence sought by the subpoenas was relevant or material to the pending unfair labor practice proceeding, the District Court entered orders denying the Board's applications for orders enforcing the subpoenas. The Board appealed.

At the hearing before the court it was brought out that the purpose of the subpoenas was to elicit evidence as to whether S & W and the Union had entered into a collective bargaining agreement on or about May 18, 1967; whether such agreement was the direct result of the improper picketing; and whether the picketing ceased with the signing of the contract. It was represented that General Counsel sought the production of a copy of the contract and the testimony of Williams and Shaw, the two major officers of S & W, in order to obtain and present evidence concerning the execution of the contract, the manner in which it was executed, what led up to it, and its contents. It was the position of the General Counsel, in connection with the unfair labor practice proceeding, that if the contract was executed by S & W as a result of improper coercive Union conduct—the improper picketing—abrogation of the contract would be an appropriate remedy for the unfair labor practice Section 8(b) (7) (B) violation. The

District Court, however, was of the view that "[t]he issue [as to whether the contract was the coerced product of the improper picketing] is not within the fair scope of the charge of a Section 8(b) (7) violation". Accordingly, it denied enforcement of the subpoenas.

■ We reverse. The Supreme Court in two cases, Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424, and Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, set forth the standards governing judicial enforcement of administrative subpoenas. Duly issued subpoenas are to be enforced if the agency is seeking information "not plainly incompetent or irrelevant to any lawful purpose". Endicott Johnson Corp. v. Perkins, supra, 317 U.S. at 509, 63 S.Ct. at 343. And, the essential requirement for both the issuance and enforcement of a National Labor Relations Board subpoena is that the production of the evidence or the giving of the testimony called for by the subpoena must relate to a "matter under investigation or question". The evidence or testimony sought must touch upon the matter under investigation or in question. Section 11 (1) and 11(2) of the Act; N. L. R. B. v. Rohlen, 7 Cir., 385 F.2d 52, 55–56.

No contention is advanced that the subpoenas are unreasonably burdensome. The primary issue presented by these appeals is whether the evidence and testimony sought is relevant to the matter "under investigation or in question" before the Board.

■ Here the question concerning the remedy to be applied for the admitted Section 8(b) (7) (B) violation—the picketing which constituted an unfair labor practice—remains to be considered and determined in the Board proceeding.

4. The complaint alleged that the Union picketed S & W at a time when (1) the Union was not certified and (2) a valid representation election had been held within the prior 12 months; that an object of the picketing was to force or require S & W to recognize and bargain with the Union as the representative of S & W's drivers and/or to force or require S & W's drivers to accept or select the Union as their collective bargaining representative; and that the picketing violated Section 8(b) (7) (B).

And the Board has broad discretion in the fashioning of a remedy "to undo the effects of violations of the Act". Fibreboard Paper Products Corp. v. N. L. R. B., 379 U.S. 203, 216, 85 S.Ct. 398, 406, 13 L.Ed.2d 233. Under appropriate circumstances the Board has the power to set aside collective bargaining agreements which are the product of unfair labor practices. International Ladies' Garment Workers' Union v. N. L. R. B., 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762. Whether S & W and the Union entered into a collective bargaining agreement which is the coerced product of the unfair labor practice picketing is, therefore, a permissible subject for inquiry by the Board in its consideration of what appropriate remedy might be applied to undo the effects of that picketing. While the Board is to "draw on enlightenment gained from experience" in the fashioning of an appropriate remedy (National Labor Relations Board v. Seven-Up Bottling Co., 344 U.S. 344, 346, 73 S.Ct. 287, 289, 97 L.Ed. 377) it is not relegated to fashioning the remedy in a vacuum without the aid of information and facts material to the actual effect of the particular unfair labor practice it seeks to remedy.

■ The respondents and the intervenor urge that the evidence and testimony sought by the subpoenas relate to the possible existence of a Section 8(a) (1) violation neither presented by the charges filed nor the complaint issued, and that consequently it relates to a charge other than that under investigation or in question before the Board. But in the posture of this case this is of no import. That the evidence and testimony sought may reveal the existence of an uncharged independent violation of the Act does not serve to destroy its relevancy to a consideration of the permissibility of contract abrogation as an appropriate remedy for the Section 8(b) (7) (B) violation charged against and admitted by the Union. And the fashioning of the remedy to be applied for the admitted violation is a phase of the Board proceeding remaining pending before the examiner—he is required (Section 10(c) of the Act) to file a recommended order which, of course, will include a remedy. The charged violation having been established by admission the fashioning of an appropriate remedy is a concomitant phase of the matter under investigation, and the evidence and testimony sought is relevant thereto.

The judgment order of the District Court in each of these appeals is reversed, and the matters are remanded to the District Court with instructions to enforce each of the subpoenas.

Reversed and Remanded with Instructions.

KNOCH, Senior Circuit Judge (dissenting).

The authority bestowed on the Board in § 10(b) of the Act does not empower it to investigate and assign remedies absent the filing of a charge of unfair labor practice by some private party.

If the Board had such a charge on file to the effect that the Union here had committed a § 8(b) (1) (A) violation or that the employer had committed a § 8(a) (1) or (2) violation, then the evidence here sought would be relevant and the proposed remedy appropriate assuming that the violation was found to exist. But there is no such charge here, and Congress has not seen fit to authorize the Board to act on its own motion without a charge.

I feel strongly that we are venturing into the dangerous sea of judicial legislation if we allow the Board to do indirectly under the guise of fashioning a remedy what Congress has not allowed the Board to do directly. A further unfortunate corollary to our ruling might be an inhibiting effect on the filing of legitimate charges by employers lest the unforeseen "remedies" granted them prove more burdensome than the ills they are designed to cure. I would affirm the decision of the District Judge.