Louis J. BONNAFFONS, William D. Melton, and Shell Oil Company, Plaintiffs-Appellants,

v.

The UNITED STATES DEPARTMENT OF ENERGY, The Government of Puerto Rico, The Shell Company (Puerto Rico) Limited, and Commonwealth Oil Refining Company, Inc., Defendants-Appellees.

No. DC–80.

Temporary Emergency Court of Appeals.

Argued Oct. 30, 1980.

Decided March 11, 1981.

**550**

William E. Wickens, Howrey & Simon, Washington, D. C., with whom William Simon, W. Donald Dresser and Joanne Parsons, Washington, D. C., of the same firm; and William G. Riddoch, Shell Oil Company, Houston, Tex., were on the brief for plaintiffs-appellants.

Larry Ellsworth, Dept. of Energy, Washington, D. C., with whom Sandra K. Webb and W. Thomas Rosemond, Jr. of the same agency and Alice Daniel, Asst. Atty. Gen., Civil Div., Dept. of Justice, Washington, D. C., were on the brief for defendant-appellee, Dept. of Energy.

Darci L. Rock, Bracewell & Patterson, Washington, D. C., with whom John R. Cope and Roger L. Reynolds of the same firm, and Miguel Gimenez Munoz, Atty. Gen., Dept. of Justice, San Juan, Puerto Rico, were on the brief for defendant-appellee, The Government of Puerto Rico.

Max O. Truitt, Jr., Wilmer & Pickering, Washington, D. C., with whom C. Loring Jetton, Jr. and Helen Torelli, Washington, D. C., of the same firm, were on the brief for defendant-appellee, The Shell Company (Puerto Rico) Limited.

James Hamilton, Ginsburg, Feldman, Weil & Bress, Washington, D. C., with whom Fred W. Drogula and Alan R. Yuspeh, Washington, D. C., of the same firm, and David Galbraith, Washington, D. C., were on the brief for defendant-appellee, Commonwealth Oil Refining Company, Inc.

Before LARSON, BONSAL and PECK, Judges.

LARSON, Judge.

In this appeal the Court is called upon to determine not only the relationship between two Royal Dutch/Shell Group corporations but also the relationship existing between the extended family serving the petroleum needs of the island of Puerto Rico. This is not merely a dispute between "first cousins" or "brother and sister;" this is a dispute affecting the interdependence of the Puerto Rican petrochemical industries in which both government and private parties are involved. Conscious of the deference afforded administrative decisions in these matters, *see Amtel, Inc. v. FEA*, 536 F.2d 1378, 1383 (Em.App.1976); *Pasco, Inc. v. FEA*, 525 F.2d 1391, 1401–04 (Em.App. 1975), and the Emergency Petroleum Allocation Act's (EPAA), 15 U.S.C. § 753(b)(1)(D), objective of preserving a sound and competitive petroleum industry, this Court feels that the District Court's decision, 492 F.Supp. 1276, must be affirmed and this appeal denied.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs Shell Oil Company (Shell USA), Louis J. Bonnaffons, a Shell service station operator, and William D. Melton, a Shell gasoline customer, sought summary judgment setting aside an order of the defendant Department of Energy's (DOE) Office of Hearings and Appeals (OHA). This order directed Shell USA to supply a related Puerto Rican distributor, defendant The Shell Company (Puerto Rico) Limited (Shell PR), with gasoline and to purchase the gasoline from defendant Commonwealth Oil Refining Company, Inc. (CORCO), a Puerto Rican refiner. The District Court denied plaintiffs' motion for summary judgment and granted defendants' cross-motions for summary judgment and dismissed the case. *Bonnaffons v. DOE*, 492 F.Supp. 1276, 4 En.Mngm't Rep. (CCH) ¶ 26,210 (D.D.C. 1980). On appeal, plaintiffs contend that DOE's granting of "exception relief"[1] from

---

1. Exception relief is granted pursuant to § 504(a) of the Department of Energy Organization Act, 42 U.S.C. § 7194(a), and the procedures of 10 C.F.R., Part 205, and the Exceptions and Appeals Guidelines, 7 En.Mngm't Rep. (CCH) ¶ 80,003–46.

the Puerto Rico Price Rule, 39 Fed.Reg. 17,764 (1974), to Shell PR exceeded its lawful authority and was not supported by substantial evidence.

The Puerto Rico Price Rule requires Puerto Rico marketers affiliated with mainland United States refiners to price gasoline under the Refiner Price Rule, 10 C.F.R. § 212.83, rather than the Reseller Price Rule, 10 C.F.R. § 212.93. This means that these marketers will "roll in" their higher costs with the lower costs of their parent refiners and recover them nationwide under the Equal Application Rule, 10 C.F.R. § 212.83(h). Because Shell PR is not affiliated with a mainland refiner,[2] it is not able to roll in its costs with such a refiner and spread its costs nationwide. In early 1979 substantial cost increases in foreign crude oil required Shell PR to substantially raise its prices and resulted in large losses in its sales volume. Because of this situation, Shell PR applied for exception relief from the effect of the Puerto Rico Price Rule.

Also bearing on Shell PR's application for exception relief is the precarious nature of the petrochemical industry in Puerto Rico. *See CORCO*, 4 DOE ¶ 81,118, at 82,997–98 (1979); *Phillips Puerto Rico Core, Inc.*, 2 DOE ¶ 81,106, at 83,210–14 (1978). In the 1950s, the federal government under the Operation Bootstrap Program provided incentives to induce firms engaged in petroleum-related activities to construct facilities in Puerto Rico that would rely on imported petroleum feedstocks. Since the fall of 1973, when the Arab oil embargo resulted in dramatically increased prices for foreign crude oil, the Puerto Rican refining and petrochemical industry has experienced severe financial difficulties. CORCO is the cornerstone of this petroleum industry.[3] Its precarious financial position has been considered by the DOE in a number of previous proceedings. *See, e. g., CORCO*, 4 DOE ¶ 80,206 (1979); *Phillips Puerto Rico Core, Inc.*, 2 DOE ¶ 81,106 (1978); *Ashland Oil, Inc.*, 6 FEA ¶ 83,049 (1977). CORCO filed a petition for bankruptcy on March 2, 1978, and has since been operating as a debtor-in-possession under the jurisdiction of the bankruptcy court. Shell PR has been a major purchaser of gasoline from CORCO and accounts for 25% of CORCO's sales.

After two hearings and several notice and comment periods, the OHA issued an order that in effect made Shell USA the mainland refiner for Shell PR. This order required Shell USA to supply gasoline to Shell PR at mainland prices and to purchase this gasoline from CORCO.

## II.  WAIVER OF RIGHTS

■ Defendants argue that plaintiffs waived any rights they had to protest the OHA decision by their failure to exhaust administrative remedies. The individual plaintiffs, Bonnaffons and Melton, did not participate in the administrative proceedings at all, allegedly because they never received notice of the proceedings.[4] Plaintiffs admit that the individual plaintiffs were not entitled to individual notice; however, plaintiffs argue that the individual plaintiffs were entitled to notice in the Federal Register. The regulation that plaintiffs rely on does not support this assertion; it merely says that DOE *may* determine that notice should be published in the Fed-

---

2. While Shell USA does not itself own Shell PR, 99% of the stock of Shell PR is owned by the Royal Dutch Petroleum Company. The Royal Dutch Petroleum Company also owns 69% of the stock of Shell USA.

3. CORCO was incorporated under the laws of the Commonwealth of Puerto Rico in 1953 and is the single largest industrial enterprise on the Island. The construction of CORCO's refinery in 1956 was one of the first major projects undertaken under the auspices of the Operation Bootstrap Program. CORCO at one time supplied between 75 and 85% of all petroleum products used in Puerto Rico and as of 1978 was still the primary supplier of a number of petroleum products consumed in Puerto Rico. *Phillips Puerto Rico Core, Inc.*, 2 DOE ¶ 81,106, at 83,209–10 (1978); *CORCO*, 5 FEA ¶ 83,132, at 83,586 (1977); *CORCO*, 2 FEA ¶ 83,230, at 83,734–35 (1975).

4. We agree with the District Court that Bonnaffons and Melton are nominal plaintiffs and that the real moving force behind this lawsuit is Shell USA. *Bonnaffons v. DOE*, 492 F.Supp. 1276, 4 En.Mngm't Rep. (CCH) at 27,777 n.1.

eral Register. *See* 10 C.F.R. § 205.53(b). Even were Federal Register notice deemed necessary, this Court believes such notice was given on March 5, 1979, when the DOE announced hearings in Puerto Rico on the precarious nature of the Puerto Rico petrochemical industry and possible solutions to the problem. *See* 48 Fed.Reg. 13,068 (1979).

■ Shell USA also complained that it did not receive sufficient notice during the proceedings. Yet, after learning of the proposed single firm treatment of Shell USA and Shell PR discussed at the March 1979 hearings in Puerto Rico and after receiving a certified letter from OHA inviting its participation in the May 1979 hearing, Shell USA chose not to attend. On July 19, 1979, Shell USA was served with OHA's Proposed Decision and Order and the procedural regulations governing the remainder of the proceedings. Shell USA's special attention was drawn to the requirement that objections must specify with particularity the findings with which the party disagreed. *See* 10 C.F.R. § 205.62(b). As the District Court pointed out, Shell USA did not adequately specify certain findings of fact that it now contests, such as the precarious nature of the Puerto Rican petroleum industry, when it filed its Statement of Objections. *Bonnaffons v. DOE,* 492 F.Supp. 1276, 4 En.Mngm't Rep. (CCH) at 27,776-77. Under such circumstances, we believe Shell USA failed to properly exhaust its administrative remedies. We need not rest our decision solely on these grounds, however, since we also believe that plaintiffs' appeal fails on the merits.

### III. SUPPLY REQUIREMENT

■ Shell USA does not challenge DOE's lawful authority to assign it as a supplier to Shell PR; rather Shell USA focuses on the purchase requirement of the DOE Order. It is clear that in an exception proceeding, DOE has the authority to assign an applying party to a new supplier. *Mobil Oil*

*Corp. v. DOE,* 469 F.Supp. 1119, 4 En. Mngm't Rep. (CCH) ¶ 26,147, at 27,300 (D.D.C.1979); *see Marathon Oil Co. v. DOE,* 482 F.Supp. 651 (D.D.C.1979); Exceptions and Appeals Guidelines, 7 En.Mngm't Rep. (CCH) ¶ 80,012. The question of whether it is within the agency's authority to require the purchase of gasoline from a specific refiner is somewhat more problematic.

### IV. PURCHASE REQUIREMENT

*Shell USA* argues that DOE has no statutory or regulatory authority to order Shell USA to purchase gasoline from CORCO; that the permissible scope of exception relief is limited to "waiver or modification" of whatever rule, regulation, or order caused Shell PR's difficulty.[5] By requiring Shell USA to purchase gasoline from CORCO, DOE is imposing an affirmative obligation that Shell USA believes is inconsistent with the notion of waiver or modification. Defendants argue that authority to require firms to buy gasoline is inherent in the statutory and regulatory scheme. We agree with the District Court that DOE's power to require the purchase of gasoline is not prohibited by any statute or regulation and that the lack of any express authority is insignificant. *See Bonnaffons v. DOE,* 492 F.Supp. 1276, 4 En.Mngm't Rep. (CCH) at 27,776. The DOE, and its predecessor agency, the Federal Energy Administration (FEA), have been given broad discretion and flexibility to attain the objectives of the EPPA and on several occasions the courts have recognized the power of the agencies to grant exception relief even in the absence of a specific grant of statutory authority. *See Marathon Oil Co. v. FEA,* 547 F.2d 1140, 1145 (Em.App.1976); *New England Petroleum Corp. v. FEA,* 455 F.Supp. 1280, 1295-1300 (S.D.N.Y.1978).

■ Shell USA relies on FEA's Interpretation No. 1976-20, 42 Fed.Reg. 7940 (1976), *aff'd, USA Petroleum Corp.,* 5 FEA ¶ 80,555 (1977), for much of its argument that DOE

---

5. *See generally* 10 C.F.R. § 205.2 which provides in pertinent part:

"Exception means the waiver or modification of the requirements of a regulation, ruling or

generally applicable requirement under a specific set of facts."

lacks authority to order it to purchase gasoline from CORCO. In that interpretation, a supplier sought a determination whether one of its purchasers was required by the FEA's freeze of supplier-purchaser relationships in effect on May 15, 1973, to continue purchasing crude oil from it. The FEA, in ruling that the purchaser need not purchase oil from the supplier, pointed out that the freeze was designed solely to insure access of a purchaser to adequate supplies of oil. If the purchaser, for whose benefit the freeze was intended, chose to waive the benefit it should be allowed to do so. The factual situation of the present case is much different with the interests and needs of several disparate parties at stake. Here the benefited parties of the DOE order will be CORCO and Shell PR, not Shell USA, the proposed purchaser. The FEA Interpretation did not involve the agency's powers in an exception context nor did it address the special problems of petroleum allocation and distribution in Puerto Rico. Given this factual situation, exception relief ought to be left to agency discretion.

Shell USA also argues that OHA neglected to balance the competing statutory goals of the EPAA.[6] Shell USA asserts that these goals are not grants of authority but merely limit the exercise of authority elsewhere conferred and that by focusing on only two of the nine statutory objectives, OHA unduly emphasized those two goals. OHA concluded that relief was necessary in order (1) to preserve a sound and competitive petroleum industry and (2) to ensure equitable distribution and pricing. We think the District Court was correct in finding that the agency properly referred to these statutory objectives in reaching its decision. *Bonnaffons v. DOE*, 492 F.Supp. 1276, 4 En.Mngm't Rep. (CCH) at 27,776. Congress and the Temporary Emergency Court of Appeals (TECA) have recognized that the statutory objectives of the EPAA are inconsistent and that the accomplishment of some might result in the sacrifice of others. *Basin, Inc. v. FEA*, 552 F.2d 931, 935 (Em.App.1977); *Amtel, Inc. v. FEA*, 536 F.2d 1378 at 1383 and n.9 (Em.App.); Conf. Rep. No. 93–628, 93d Cong., 1st Sess. 2582, *reprinted in* [1973] U.S.Code Cong. & Ad. News 2688, 2688–89. TECA has even recognized that in appropriate circumstances the frustration of only one objective can

---

**6.** The statutory goals of the EPAA are contained in 15 U.S.C. § 753(b)(1). That section provides:

"(b)(1) The regulation under subsection (a) of this section, to the maximum extent practicable, shall provide for—

(A) protection of public health (including the production of pharmaceuticals), safety and welfare (including maintenance of residential heating, such as individual homes, apartments and similar occupied dwelling units), and the national defense;

(B) maintenance of all public services (including facilities and services provided by municipally, cooperatively, or investor owned utilities or by any State or local government or authority, and including transportation facilities and services which serve the public at large);

(C) maintenance of agricultural operations, including farming, ranching, dairy, and fishing activities, and services directly related thereto;

(D) preservation of an economically sound and competitive petroleum industry; including the priority needs to restore and foster competition in the producing, refining, distribution, marketing, and petrochemical sectors of such industry, and to preserve the compet-

itive viability of independent refiners, small refiners, nonbranded independent marketers, and branded independent marketers;

(E) the allocation of suitable types, grades, and quality of crude oil to refineries in the United States to permit such refineries to operate at full capacity;

(F) equitable distribution of crude oil, residual fuel oil, and refined petroleum products at equitable prices among all regions and areas of the United States and sectors of the petroleum industry, including independent refiners, small refiners, nonbranded independent marketers, branded independent marketers, and among all users;

(G) allocation of residual fuel oil and refined petroleum products in such amounts and in such manner as may be necessary for the maintenance of, exploration for, and production or extraction of—

(i) fuels, and

(ii) minerals essential to the requirements of the United States, and for required transportation related thereto;

(H) economic efficiency; and

(I) minimization of economic distortion, inflexibility, and unnecessary interference with market mechanisms."

support exception relief. *See Twin City Barge & Towing Corp. v. Schlesinger*, 603 F.2d 197, 202 (Em.App.1979).

Both the District Court and defendants find support for DOE's authority to impose purchasing obligations in DOE's Entitlements Program, 10 C.F.R. § 211.67. *See Cities Service Co. v. FEA*, 529 F.2d 1016 (Em.App.1975); *Pasco, Inc. v. FEA*, 525 F.2d 1391 (Em.App.1975). Under the Entitlements Program, DOE effectively requires refiners of price controlled crude oil to purchase "entitlements" from firms more dependent on uncontrolled, more costly crude oil. Shell USA argues that an entitlement is not a petroleum product and that no refiner is obligated to purchase entitlements, much less entitlements from a specific seller. The fact that an entitlement is not the oil itself does not rebut defendants' analogy; the agency's allocation authority under the Entitlements Program would allow it to require the purchase of the oil itself. *See Marathon Oil Co. v. FEA*, [Court Decisions 1974–1978 Transfer Binder] En.Mngm't Rep. (CCH) ¶ 26,015, at 26,150 (W.D.Ohio 1975). Further, while oil companies are not *absolutely* required to purchase entitlements, those with a greater than average volume of price controlled oil are *effectively* obligated to purchase entitlements.

■ There are many similarities between the power exercised by the DOE in the present case and the power exercised by the FEA, and approved of by the district court, in the case of *New England Petroleum Corp. v. FEA*, 455 F.Supp. 1280 (S.D.N.Y. 1978) (NEPCO). In that case, the FEA granted the New England Petroleum Corporation (NEPCO) exception relief in the form of allowing it to earn entitlements although as a foreign based refiner NEPCO was not eligible to participate in the Entitlements Program. In the present case, the DOE has granted Shell PR exception relief in the form of allowing it to participate in the benefits of the Puerto Rico Price Rule despite the fact that Shell PR

does not technically qualify for such benefits. The FEA felt that failing to give NEPCO exception relief would frustrate the EPAA objective of preserving a competitive petroleum industry on the East Coast, *id.* at 1288 and n.19; the DOE feels that failing to give Shell PR exception relief will frustrate the same objective on the island of Puerto Rico. In *NEPCO*, the district court concluded that the FEA had the power to grant exception relief to ensure the continued viability of NEPCO. *Id.* at 1295–1300. Here the District Court has concluded that the DOE has the power to fashion exception relief to ensure the continued viability of Shell PR and CORCO. *See Bonnaffons v. DOE*, 492 F.Supp. 1276, 4 En.Mngm't Rep. (CCH) at 27,776. We believe that the exception relief devised in both *NEPCO* and the present case was appropriate and consistent with the broad and flexible agency discretion mandated by Congress. *See Bonnaffons v. DOE*, 4 En. Mngm't Rep. (CCH) at 27,774–75; *NEPCO*, 455 F.Supp. at 1298.

## V.  SUBSTANTIAL EVIDENCE REVIEW

■ Judicial review of a grant of exception relief is limited to an inquiry into whether the DOE order exceeded the agency's authority or was based on findings not supported by substantial evidence. 15 U.S.C. § 754(a)(1) (incorporating section 211(d)(1) of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note). Where there are disputed issues of fact at the agency level,[7] Shell USA argues that a substantial evidence review presupposes that the evidence has been tested by a formal adversarial hearing. One recent decision, however, has held that a trial type hearing is not required in an exception proceeding. In *Gasco, Inc. v. DOE*, 4 En.Mngm't Rep. (CCH) ¶ 26,197, at 27,673 (D.D.C. March 25, 1980), the court determined that in exception proceedings an "on the record" hearing is not required. We agree with the district court in *Gasco* and are unpersuaded by

---

7.  As noted earlier, there is a real question as to whether the issues of fact were properly disputed at the agency level. *See* page 551, *supra*.

Shell USA's attempt to distinguish that case.

Shell USA also argues that OHA's decision was impermissibly based on prior OHA decisions to which plaintiffs were not parties. In particular, Shell USA criticizes OHA's finding of the precarious nature of the refining industry in Puerto Rico. Shell USA claims that the record alone cannot sustain this finding. Irrespective of the question whether Shell USA has waived its rights to contest this finding,[8] it is our belief that OHA could properly take "official notice" of the precarious nature of the industry.[9] *See generally* 2 K. Davis, *Administrative Law Treatise*, ch. 15 (1958 and 1970 Supp.). Since OHA was principally relying on this fact in fashioning a remedy, it was allowed to draw on its cumulative experience derived from 29 prior proceedings involving CORCO and the Puerto Rican petrochemical industry. *Cf. NLRB v. Seven-Up Bottling Co.*, 344 U.S. 344, 349, 73 S.Ct. 287, 290, 97 L.Ed. 377 (1953) (NLRB should be able to rely on its "cumulative experience" in fashioning remedies).

Shell USA also contends that summary judgment that OHA's decision was supported by substantial evidence was not proper without allowing it further discovery. However, as the DOE noted, the documents that Shell USA sought to discover were all matters of public record. Further, Shell USA failed to file motions for discovery during the pendency of the administrative proceedings. Its argument that such efforts would have been futile is not really directed at discovery but at motions for an evidentiary proceeding.[10]

For the reasons set forth above, the judgment of the District Court is

AFFIRMED.

---

**8.** *Id.*

**9.** Even if noticing the state of the Puerto Rico petroleum industry could be considered the noticing of an "adjudicative" rather than a "legislative" fact, *see generally* 2 K. Davis, *supra*, § 15.03, Shell USA had ample opportunity to challenge that fact and failed to do so within the prescribed period of time. *See* page 550, *supra*.

---

**10.** Shell USA argues that motions for "discovery and/or an evidentiary proceeding" would have been a futile gesture. To support this contention Shell USA points to the rarity of the granting of a motion for an evidentiary proceeding; it points to no evidence that motions for discovery are rarely granted. Even if such evidence exists, this Court does not believe that it would excuse a failure to file a motion for discovery.