831 F.2d 290
 126 L.R.R.M. (BNA) 2696
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CHEM-NUCLEAR SYSTEMS, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 86-3111.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 3, 1987.
Decided: Oct. 9, 1987.
 
 Fred W. Suggs, Jr. (Ogletree, Deakins, Nash, Smoak and Stewart on brief) for petitioner.
 Paul J. Spielberg, Deputy Assistant General Counsel (Nancy B. Hunt, National Labor Relations Board, Rosemary M. Collyer, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Associate General Counsel, Elliott Moore, Deputy Associate General Counsel on brief) for respondent.
 N.L.R.B.
 ENFORCEMENT GRANTED.
 On Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board.
 Before WIDENER and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 The National Labor Relations Board found that Chem-Nuclear had violated Sec. 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(1) and (3) by discharging Norman Duvall because of his union activity. It ordered Duvall's reinstatement. Here, the employer no longer contests the finding that it committed an unfair labor practice when it discharged Duvall, but it contends that his reinstatement is an inappropriate remedy because it would be excessively disruptive.
 
 
 2
 We think the reinstatement remedy was within the discretion the statute vests in the Board, and we grant enforcement.
 
 
 3
 Chem-Nuclear operates a fleet of trucks for the transportation of radioactive waste material from industrial sites to disposal facilities in Barnwell, South Carolina, Beatty, Nevada, and Hanford, Washington. Norman Duvall worked as one of its truck drivers from November 1975 until he was discharged in June 1985.
 
 
 4
 Beginning in 1983, Duvall actively sought union representation of the truck drivers. He distributed union authorization cards and urged other drivers to join him in his organizational effort. When he developed little support from other drivers, he appears to have suspended those efforts. In April 1985 at a truck stop in Tuscola, Illinois, however, he met with several other Chem-Nuclear truck drivers and discussed a union organizing effort with them. Later he sought the active participation of two unions and in June picked up union authorization cards for distribution.
 
 
 5
 Duvall was highly critical of Chem-Nuclear's transportation management. He disparaged members of the management team, charging them generally with incompetency. He told other drivers that Larry Friar, the manager of transportation services, was a liar. His militancy repelled some of the other truck drivers who testified that they would avoid Duvall when they saw his truck at a truck stop. They testified that Duvall's verbal attacks upon management lowered their morale and adversely affected their attitude toward their employer. Other drivers, however, responded more sympathetically to Duvall's criticisms of management and specific company practices.
 
 
 6
 Duvall never attempted to tell any member of Chem-Nuclear's management of his complaints, though the company learned of Duvall's union organizational efforts and of his disparaging criticism of management from fellow truck drivers.
 
 
 7
 Chem-Nuclear had a system of progressive discipline. Ordinarily, at least one warning would precede a discharge, but no supervisor ever sought to discuss Duvall's complaints with him or the allegedly adverse effect of his criticism upon the morale of other employees and management. He was discharged abruptly without any prior warning.
 
 
 8
 Before the Board, Chem-Nuclear contended that it discharged Duvall not because of his protected union activity but because of his insubordination and disruptive behavior that had an adverse impact upon management's effectiveness. Here, the employer recognizes that battle was lost with the adverse finding of the Board but contends that Duvall's reinstatement would be so unduly disruptive as to make that part of the remedial order inappropriate.
 
 
 9
 The Board has broad discretion in its choice of remedies, and the choice will not be disturbed by a reviewing court unless the remedy fails to serve the purposes of the Act. NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 346-47 (1953); J.P. Stevens & Co. v. NLRB, 638 F.2d 676, 687 (4th Cir.1980). Reinstatement of a discharged employee is a normal remedy. Its reinstatement order should be enforced unless it is arbitrary, capricious or a patent attempt to serve other ends than the effectuation of the policies of the Act. See 29 U.S.C. Sec. 160(c); Virginia Elec. & Power Co. v. NLRB, 319 U.S. 533, 540 (1943).
 
 
 10
 We can find no abuse of the Board's discretion. The reinstatement of any former disgruntled employee carries with it a potential for some disruption. Duvall had been highly critical of management, but that is typical of union partisans. The Act's affirmative protections envelop statements designed to assist collective bargaining efforts. The Board is not required to shun a reinstatement remedy for a discharged union advocate simply because criticism of management was a part of his advocacy.
 
 
 11
 Before the Board, Chem-Nuclear contended that Duvall's reinstatement would be an inappropriate remedy. The contention was fully discussed, and it now finds fault with the Board's resolution of subordinate facts and the placement of emphasis upon admitted facts. If there be some flaw in the Board's reasoning process, however, it is clear that the Board exercised its discretion to order reinstatement. As to the selection of remedies, a reviewing court should not examine the Board's reasoning so critically as to invalidate the Board's choice simply because it may have left some "t" uncrossed or some "i" undotted.
 
 
 12
 Reinstatement with back pay is the normal, usual remedy when an employee has been discharged for exercising a right protected by Sec. 7. In every such case, ill feelings will have been engendered. When an employer reinstates a former employee only because it is compelled to do so, it is unlikely to welcome the former employee with open arms. In an unusual case, the Board may withhold the reinstatement remedy, but is not likely to do so unless the case is truly extraordinary.
 
 
 13
 In the absence of even more extraordinary circumstances, a reviewing court should not decline enforcement of the Board's reinstatement order.
 
 
 14
 This is not such an extraordinary case.
 
 
 15
 ENFORCEMENT GRANTED.