NATIONAL BUSINESS FORMS, INC., Petitioner,

v.

INTERNATIONAL PRINTING PRESSMEN & ASSISTANTS' UNION OF NORTH AMERICA, AFL-CIO, and Southeastern Printing Specialties and Paper Products, District Council S-7, Affiliated with the International Printing Pressmen & Assistants' Union of North America, AFL-CIO, Intervenors,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Nos. 71-1336, 71-1386.

United States Court of Appeals, Sixth Circuit.

March 31, 1972.

William M. Pate, Atlanta, Ga., for petitioner National Business Forms, Inc.; Mitchell, Pate & Anderson, Atlanta, Ga., on brief.

William A. McHugh, Jr., Atlanta, Ga., for petitioner International Printing Pressmen, etc.; Adair, Goldthwaite, Stanford & Daniel, Atlanta, Ga., on brief.

Nancy M. Sherman, N. L. R. B., Washington, D. C., for respondent; Peter G. Nash, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Corinna Lothar Metcalf, Atty. N. L. R. B., Washington, D. C., on brief.

Before CELEBREZZE and BROOKS*, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

This matter now comes to us upon a Petition for Review and a Cross-Application for Enforcement of an Order of the National Labor Relations Board entered following remand ordered by this Court in National Business Forms, Inc. v. NLRB, 6 Cir., 425 F.2d 1082 (1970).

The Board's original Decision and Order is reported at 176 N.L.R.B. No. 122, and its Supplemental Decision and Order are reported at 189 N.L.R.B. No. 136.

By the first of its above Orders, the Board had found National Business Forms, Inc., (the Company) guilty of violating Sections 8(a) (1) (3) and (5) of the Act, Title 29 U.S.C. § 158(a) (1) (3) and (5), and that a strike of its employees called by their bargaining agents [1] on June 23, 1968, was an unfair labor practice strike. The Board's Order called for the Company to cease and desist from described conduct and to take detailed remedial steps, including the reinstatement of its striking employees with back pay.

On June 23, 1968, the involved strike started. Thereafter, on July 25, 1968, an attorney for the involved union sent a telegram to the Company saying, among other things,

"On behalf of all striking employees, I have been authorized to advise you that the employees hereby unconditionally offer to return to work."

There followed exchanges between the attorneys for the Company and the Union in which the Company sought to find out whether the offer to return to work was on the condition that all the striking employees be offered reinstatement. In a letter of July 30, 1968, the Union advised the Company attorney that "my telegram was made on behalf of the strikers *individually* and also for all strikers as a *group*." With such letter the Union submitted the names of 38 striking employees desiring reinstatement. The Company's response to the foregoing included the following:

"I explained in my letter of July 26 the procedure which we are willing to follow in the reinstatement of strikers. It is not contemplated that the

---

* This case was argued to a panel consisting of Judges Celebrezze, Brooks and O'Sullivan. Judge Brooks died before a decision was reached or an opinion prepared.

1. International Printing Pressmen and Assistants' Union of North America, AFL–CIO, and Southeastern Printing Specialties and Paper Products, District Council S–7, affiliated with the International Printing Pressmen and Assistants' Union of North America AFL–CIO.

company will discharge any of the replacements hired during the strike. We are not declining to reinstate any strikers to the extent that we have vacancies for them."

The Company then offered reinstatement to 15 of the strikers and sent letters to each of the others stating:

"If you wish to be considered as an applicant for reinstatement, please complete the enclosed form and return it to us."

The evidence makes clear that it was the Union's purpose to have the Company reinstate all of the strikers. The Company advised that other than the 15 unconditionally offered reinstatement, it would reinstate others only when vacancies occurred, and stated that it would not discharge any replacements hired during the strike. The 15 offered reinstatement did not return to work. The other strikers failed to respond to the Company's request that they advise whether they desired reinstatement. There is no evidence that the Company made any further offers of reinstatement, whether to fill a vacancy or otherwise.

The Trial Examiner, affirmed by the Board with some amendments, ordered that the 15 strikers who had refused the offered reinstatement, as well as all of the other striking employees, be made whole for any loss of earnings,

"[B]y payment to each of a sum of money equal to that which he normally would have earned from August 2, 1968, to the date of a proper offer of reinstatement, less his net earnings during such period."

Thereafter this Court had before it the Company's Petition for Review of the foregoing Order and the Board's Cross-Petition for Enforcement of it. By our decision in National Business Forms, Inc. v. NLRB, *supra,* we granted enforcement except to the extent that we remanded the matter to the Board for its further consideration of its backpay awards. We said:

"On consideration, it is adjudged that the petition requesting the court to review the Board's order against it and to set aside the order in its entirety, is denied.

"It is further adjudged that the Board's order, as entered, is hereby granted enforcement, except as to those provisions of the order calling for immediate reinstatement offers and backpay to strikers comparable to those involved in Southwestern Pipe, Inc., *supra;* and, as to the provisions of the Board's order relating to such immediate reinstatement offers and backpay to such specified strikers, the case is remanded to the National Labor Relations Board for further consideration in order to determine the applicability to this case of Southwestern Pipe, Inc., *supra,* decided by the Board subsequent to its decision and order in the present proceedings." 425 F.2d at 1083–1084.

In Southwestern Pipe, Inc., 179 N.L.R.B. 364, the Board, on October 28, 1969, held that even in the face of an unfair labor practice strike, an offer by an employer to reinstate less than the whole number of the strikers tolled the Company's liability for back pay to those offered reinstatement, even though reinstatement had not been offered to the balance of the strikers. The Board there said:

"Unfair labor practice strikers must be returned to their former jobs if these are still available even if the employer must discharge replacements to make room for the returning strikers. An employer's refusal to reinstate a striker who has made himself available for work on an unconditional basis and who is entitled to be returned to his job constitutes a violation of Section 8(a) (3) of the Act. A striker may refuse an offer of reinstatement, without losing his status as a striker, because the employer has not made a similar offer to other strikers who are also entitled to immediate reinstatement. The striker is thereby engaging in protected concert-

ed activity. *But he cannot elect to continue his strike, regardless of his motive, and simultaneously demand that the employer pay him for not working."* 179 N.L.R.B. at 364–365. (Emphasis supplied.)

Upon its reconsideration of the matter, the Board entered its Supplemental Decision and Order, holding:

"*Southwestern Pipe* stands for the proposition that even though an employer fails to offer group reinstatement to all unfair labor practice strikers on application his backpay liability is tolled as to any striker who rejects employer's offer of individual reinstatement because the employer had not made a similar offer to the other strikers who were also entitled to immediate reinstatement.

\* \* \* \* \* \*

"Applying these principles in the present case, we find that Respondent tolled backpay of the 15 strikers offered reinstatement as of the date they received such offer. We, however, do not view the letter sent to the remaining strikers inquiring whether they wished to be considered for reinstatement as constituting a valid offer sufficient to toll backpay liability. We shall amend the Order accordingly."

We should make clear that while the Board and its Examiner had held that it was the Company's duty, upon the strikers' request for reinstatement, to discharge replacements hired during the strike, the Examiner conditioned the terms of the ordered Remedy as follows:

"If after such dismissals, there are insufficient positions remaining for all the striking employees who desire reinstatement, the available positions shall be distributed among them, without discrimination because of their union membership, activities, or participation in a strike, in accordance with seniority or other nondiscrimina-

tory practice as therefore has been applied in the conduct of the Company's business. Those strikers for whom no employment is immediately available after such distribution shall be placed upon a preferential hiring list with priority determined among them by seniority or other nondiscriminatory practice as theretofore has been applied in the conduct of the Respondent's business and thereafter, in accordance with such system, they shall be offered reinstatement as positions become available and before other persons are hired for such work. . . . *Backpay shall not accrue to any strikers for such intervals of time within the backpay period for whom no work or job would have been available had all the strike replacements been discharged by August 2, 1968."* (Emphasis supplied.) [2]

As this cause is now presented to us, the Company asks that we modify the Supplemental Order by eliminating *all* requirements for back pay; the intervenor unions ask that we reinstate the Board's original Order requiring that *all* strikers receive back pay. We approve the Board's Supplemental Decision and Order.

■ In passing upon the question before us we are not at liberty to weigh the economic consequences that may be visited upon the Company by the Board's ordered Remedy, provided its exactions are within the Board's granted authority. By our first decision we sustained the Board's finding that the Company was guilty of violation of the Act, resulting in an unfair labor practice strike. We do not reexamine such holding.

We quote the following relevant and controlling principles of law as they are set out in the Board's brief to this Court.

"The law regarding an employer's duty to reinstate strikers is clear.

2. We have not been advised what has occurred at the Company's plant since the hearing before the Trial Examiner in Oc-

tober of 1968. The record shows that the involved strike was then still in progress.

Where employees engage in an economic strike, an employer must reinstate strikers who apply for reinstatement to positions which are vacant at the end of the strike or become vacant thereafter; but he need not discharge strike replacements to make room for the strikers. However, where (as here) the strike is an unfair labor practice strike, strikers are entitled, as a matter of right, to reinstatement upon proper application, even if the employer must discharge replacements to make room for the returning strikers. N. L. R. B. v. Fleetwood Trailer Co., Inc., 389 U.S. 375 [88 S.Ct. 543, 19 L.Ed.2d 614] (1967). An employer's refusal to accept such an offer to return to work by unfair labor practice strikers violates Section 8(a) (3) of the Act, and the employees are entitled to be made whole for any loss of earnings suffered by reason of that refusal. Mastro Plastics [Corp.] v. N. L. R. B., 350 U.S. 270, 278 [76 S.Ct. 349, 100 L.Ed. 309] (1956)."

We deal only with the propriety and validity of the remedies chosen by the Board to enforce obedience to the commands of the Act. Section 10(c) of the Act, 29 U.S.C. § 160(c), provides that upon a finding of an unfair labor practice the Board,

> "[S]hall issue * * * an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay as will effectuate the policies of [the Act]."

In *Fibreboard Paper Products Corp. v. National Labor Relations Board,* 379 U. S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964), the Supreme Court said, referring to the above section,

> "That section 'charges the Board with the task of devising remedies to effectuate the policies of the Act.' [National] Labor [Relations] Board v. Seven-Up Bottling Co., 344 U.S. 344, 346 [73 S.Ct. 287, 289, 97 L.Ed. 377]. The Board's power is a broad discretionary one, subject to limited judicial

review. *Ibid.* '[T]he relation of remedy to policy is peculiarly a matter for administrative competence . . . .' Phelps Dodge Corp. v. [National] Labor [Relations] Board, 313 U.S. 177, 194 [61 S.Ct. 845, 852, 85 L.Ed. 1271]. 'In fashioning remedies to undo the effects of violations of the Act, the Board must draw on enlightenment gained from experience.' [National] Labor [Relations] Board v. Seven-Up Bottling Co., 344 U.S. 344, 346 [73 S. Ct. 287, 289]. The Board's order will not be disturbed 'unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.' Virginia Elec. & Power Co. v. [National] Labor [Relations] Board, 319 U.S. 533, 540 [63 S.Ct. 1214, 1218, 87 L.Ed. 1568]. Such a showing has not been made in this case." 379 U.S. at 216, 85 S.Ct. at 405.

We are of the opinion the Board's Supplemental Decision and Order, 189 N.L.R.B. No. 136, does not exceed its power and we are not at liberty to deny its enforcement.

It is accordingly enforced and review is denied.