467 F.2d 164
 81 L.R.R.M. (BNA) 2097, 69 Lab.Cas. P 12,972
 GOLDEN STATE BOTTLING COMPANY, Inc., formerly d/b/a
Pepsi-Cola Bottling Company of Sacramento, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
ALL AMERICAN BEVERAGES, INC., d/b/a Pepsi-Cola Bottling
Company of Sacramento, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 71-1290, 71-1324.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 21, 1972.
 
 Morton B. Jackson, (argued), H. Walter Croskey, of Jackson, Goodstein, Kumler, Copes, Croskey & Smith, Los Angeles, Cal., Archie G. Parker, (argued), of Rowland, Clowdus & Parker, Sacramento, Cal., for petitioners.
 William Du Ross, III, Atty., (argued), Roy O. Hoffman, Director, NLRB, Region 20, San Francisco, Cal., Peter G. Nash, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Janet Skaare Morris, Attys., NLRB, Washington, D.C., for respondent.
 Before CHAMBERS, BROWNING and KILKENNY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Golden State owned and operated the Pepsi-Cola Bottling Company of Sacramento. In 1964 the Board found that in the preceding year Golden State had violated sections 8(a) (3) and (1) of the Act by discriminatorily discharging one of its employees, Kenneth L. Baker, a driver-salesman. The Board ordered Golden State to offer Baker reinstatement and make him whole for any loss of earnings from the date of discharge to the date of reinstatement. We upheld the Board's order. NLRB v. Golden State Bottling Co., 353 F.2d 667 (9th Cir. 1965). In 1968, with the controversy not yet resolved by compliance with the order, Golden State sold Pepsi-Cola Bottling to All American. In 1969 the Board issued a supplemental order imposing liability upon both Golden State and All American for back pay found to be due Baker for periods before and after the 1968 sale. Both companies challenge the order; the Board seeks enforcement.
 
 
 2
 1. All American argues that it is not liable for back pay accruing before or after the acquisition. We disagree. Pepsi of Sacramento was a selfcontained, going operation. No change was made in either managerial or supervisory personnel as a result of the sale. All but two or three of the approximately 50 employees of Pepsi were retained under All American's ownership. All of the 12 distributors who handled the products under contract continued with All American. The product remained the same, the customers remained the same, and there was no cessation or change in the method of operation of the plant. The chief executive of the Pepsi operation, Eugene B. Schilling, held the same post before and after the sale. This and other evidence offered substantial support for the Board's finding that All American purchased Pepsi with knowledge of the unfair labor practice litigation. On this record it was proper for the Board to hold All American responsible for remedying violations of the Act committed by its predecessor. United Automobile, Aerospace, & Agricultural Implement Workers of America, U.A.W. v. NLRB, 442 F.2d 1180, 1183 (9th Cir. 1971); Perma Vinyl Corp., 164 NLRB 968 (1967), enforced sub nom. United States Pipe & Foundry v. NLRB, 398 F.2d 544 (5th Cir. 1968). See generally, Du Ross, Protecting Employee Remedial Rights under the Perma Vinyl Doctrine, 39 Geo.Wash.L.Rev. 1063 (1971).
 
 
 3
 2. We do not consider whether the Board properly held Golden State liable for post-acquisition lost wages. Golden State agreed to indemnify All American for any liability imposed upon All American for back pay, and we have upheld the Board's imposition of such liability upon All American for the post-acquisition period. Accordingly, Golden State concedes that it is liable for such wages by virtue of its agreement, whether or not it would also be liable absent that agreement.
 
 
 4
 3. Pepsi converted most of its driver positions to distributorships in October 1964. Petitioners argue that this change ended their liability to Baker because distributors are "independent contractors" excluded from the coverage of the Act by 29 U.S.C. Sec. 152(3). However, it is undisputed that when Baker was discriminatorily discharged he was an ordinary employee. The Act's remedies are not thwarted by the fact that an employee who is within the Act's protections when the discrimination occurs would have been promoted or transferred to a position not covered by the Act if he had not been discriminated against. NLRB v. Bell Aircraft Corp., 206 F.2d 235, 236-237 (2d Cir. 1953).
 
 
 5
 4. The offer to reinstate Baker as a driver-salesman did not end liability for back pay. The Board found upon ample evidence that Baker would have become a distributor but for his unlawful discharge. According to petitioners' own testimony, a distributorship would have involved more income. It was therefore not sufficient to offer Baker reinstatement as a driver-salesman. That position would have been "nonequivalent employment the acceptance of which would have deprived [Baker] of the very [right that was] violated by the employer." Bon Hennings Logging Co. v. NLRB, 308 F.2d 548, 557 (9th Cir. 1962).
 
 
 6
 5. Having found that the unlawfully discharged employee was Pepsi's most successful driver-salesman before termination, and that he would have been given a distributorship but for the discriminatory discharge, it was proper for the Board to conclude that the goal of complete compensation would be most nearly achieved by computing Baker's losses on the basis of the profits of the most successful distributor. As we recently said, "The Board has wide discretion in selecting criteria for reconstructing what would have happened in a given case but for the discrimination." NLRB v. Superior Roofing Co., 460 F.2d 1240 (9th Cir. 1972).
 
 
 7
 We have examined petitioners' other objections to the method of computation and the use of profits in determining the amount of the award. The Board's decision "can fairly be said to effectuate the policies of the Act," NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 347, 73 S.Ct. 287, 289, 97 L.Ed. 377 (1953), and is certainly not "arbitrary or unreasonable in the circumstances involved." NLRB v. Brown, & Root, 311 F.2d 447, 452 (8th Cir. 1963).
 
 KILKENNY Circuit Judge (dissenting):
 
 8
 I would not extend the Perma Vinyl doctrine to apply to the facts on the record before us. NLRB v. Burns Security Services, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972) and Brown v. NLRB, 462 F.2d 699 (C.A.9, 1972), in my opinion, are applicable to our facts and require us to deny enforcement of the Board's supplemental order.