SYSTEMS MANAGEMENT, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

International Brotherhood of Painters and Allied Trades of the United States and Canada, Local 327, AFL–CIO, Intervenor.

SYSTEMS MANAGEMENT, INC., Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES OF the UNITED STATES AND CANADA, LOCAL 327, AFL–CIO, Respondent.

Nos. 89–3109, 89–3232 and 89–3233.

United States Court of Appeals, Third Circuit.

Argued Oct. 5, 1989.

Decided April 17, 1990.

Rehearing and Rehearing In Banc Denied May 11, 1990.

As Amended May 11, 1990.

Allen G. Siegel, Fred S. Sommer (argued), Jeanne Philbin, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for petitioner in Nos. 89–3109 and as respondent in Nos. 89–3232/33.

Joseph E. Desio, Acting General Counsel, Robert E. Allen, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Collis Suzanne Stocking, Supervisory Atty., William A. Baudler (argued), N.L.R.B., Washington, D.C., for respondent in Nos. 89–3109 and as petitioner in Nos. 89–3232/33.

Before SLOVITER, GREENBERG and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This petition for enforcement brought by the National Labor Relations Board (NLRB) presents us with a number of issues, the most significant of which involve questions as to: (1) whether Systems Management (Systems), an employer of only part-time employees, may be deemed to be a "successor" to a predecessor janitorial and maintenance service which employed only full-time personal; and (2) if so, whether the "make whole" remedy ordered by the Board may be imposed in favor of Systems' part-time employees, as well as the full-time employees of Systems' predecessor.

The NLRB, in an administrative hearing and order, had ruled that Systems violated sections 8(a)(1), (3) and (5) of the National Labor Relations Act (29 U.S.C. § 158(a)),[1] when Systems, in seeking to become the low bidder on a janitorial contract, refused to hire its predecessor's full-time employees and refused to recognize their union, Service Employees International Union, Local 29, AFL–CIO (Local 29). Instead, Systems recognized Local 327 of the International Brotherhood of Painters and Allied Trades of the United States and Canada, AFL–CIO (Local 327), a union Systems had dealt with in the past. On February 21, 1989, the NLRB approved the ALJ's findings, conclusions and remedies.

---

1. Title 29 U.S.C. § 158 states in relevant part: It shall be an unfair labor practice for an employer:

 (a)(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

 * * * * * *

 (a)(3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization....

 * * * * * *

 (a)(5) To refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

Our standard of review in this case prescribes that as to issues of fact, the NLRB's findings of fact may only be set aside if they are not supported by substantial evidence, *Graham Architectural Products Corp. v. NLRB*, 697 F.2d 534, *reh'g denied*, 706 F.2d 441 (3d Cir.1983). On the other hand, "review of the Board's application of legal precepts to the fact is plenary," *Allbritton Communications Co. v. NLRB*, 766 F.2d 812, 817 (3d Cir.1985).[2]

## I.

Systems is a janitorial service company that services office buildings in the downtown Pittsburgh metropolitan area. Systems has achieved success in its business by providing a low cost janitorial service based on its policy of hiring only part-time workers for its janitorial staff thereby ensuring lower labor costs. To implement this policy, Systems hires personnel with little or no career ambitions in the janitorial services field—typically students or housewives seeking temporary work.

## A.

This proceeding had its origins in 1985 when the First Union Bank solicited bids from various companies to provide janitorial services at two buildings it managed in downtown Pittsburgh, one at 300 Sixth Avenue (300 Sixth), and the other the Porter building (Porter). This contract for janitorial services was initially awarded to Pritchard Services, Inc. (Pritchard), effective November 1, 1985 through November 30, 1988. That contract, which contained a profit increment, included labor costs of only $116,000 per year, as opposed to $153,000 per year under First Union's previous contract. Pritchard attempted to achieve labor cost savings by hiring new part-time employees at wages below the union wage instead of retaining its prior unionized incumbent full-time employees.

Local 29, which had represented the workers dismissed by Pritchard, protested Pritchard's action by picketing various Pritchard locations in Pittsburgh. The Union threatened as well to engage in informational picketing at Pritchard's other work sites. Confronted by Local 29's response, Pritchard agreed to terminate its new part-time employees, and rehire its former full-time employees at the prior, and higher, wage rate.

Pritchard then met with First Union and sought to convince First Union to renegotiate its contract in order to reflect the higher wage costs that Pritchard was now required to bear. First Union refused to modify the contract and on January 20, 1986, Pritchard terminated its contract with First Union as it was permitted to do under its contract. First Union then cast about for a new janitorial service for both the Porter and 300 Sixth buildings.

First Union and Systems commenced negotiations on February 3, 1986. At that meeting First Union informed Systems that the Pritchard employees had been represented by Local 29. Systems in turn informed First Union that it had had prior collective bargaining agreements and a "good business relationship" (S.A. 228–231) with Local 327, and that Local 327 would be interested in representing System's employees at both of the First Union buildings.

Systems then commenced negotiations with Local 327 with the aim of having Local 327 represent its employees. These negotiations culminated in Systems and Local 327 entering into a collective bargaining agreement on January 3, 1986, notwithstanding Local 29's status as the recognized union for the janitorial employees servicing the First Union buildings. On February 13, 1986, Systems and First Union signed a contract calling for Systems

---

**2.** The National Labor Relations Board's construction of a statute is to be given some, but not unlimited, deference. *See NLRB v. Local 103*, 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978) ("Courts may prefer a different application of the relevant sections, but 'the function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility which Congress committed primarily to the National Labor Relations Board, subject to limited judicial review ... Of course, recognition of the appropriate sphere of the administrative power obviously cannot exclude all judicial review of the Board's action.' ")

part-time workers to start working on February 16, 1986. Systems employees were to be represented by Local 327 at a wage rate less than half the full-time rate paid to the Pritchard employees who had been represented by, and were members of, Local 29.

Systems began hiring new employees in early February 1986. None of Pritchard's employees were informed that Systems was hiring workers for janitorial positions, and nor were any offered employment in the buildings. The new part-time employees hired by Systems were told that Systems had recognized Local 327 as their union and that they were obligated for dues and "checkoff."

### B.

Local 29, after initially attempting to negotiate with Systems, filed an unfair labor practice complaint with the NLRB seeking reinstatement of Local 29 as the recognized union for Systems' employees and for other remedies. After a hearing, the Administrative Law Judge found that, with respect to the building at 300 Sixth Avenue, Systems had violated the National Labor Relations Act (the "Act") by refusing to negotiate with Local 29, by refusing to hire the Pritchard employees who were members of Local 29, and by improperly recognizing Local 327 as the representative of Systems' new employees.[3]

More specifically, the ALJ ordered that Systems should cease from: (a) refusing to hire employees because of their affiliation with Local 29; (b) failing to recognize Local 29 as the exclusive representative of the employees; (c) recognizing Local 327 and giving effect to the collective-bargaining agreement signed with Local 327.

The ALJ additionally required that Systems: (a) offer to reinstate all of the Local 29 members with full compensation for their discharge; (b) bargain in good faith with Local 29 as the exclusive representative of the employees; (c) make whole all

employees injured by the conduct of Systems. (ALJ op. p56–58.) Hand-in-hand with this remedy the ALJ required that back-pay, at the full-time rate required by the Local 29 contract, be given as compensatory back-pay to the Local 29 employees who were not hired by Systems. Additionally, the ALJ required that back-pay at the Local 29 full-time rate be awarded to all Local 327 employees despite their employment on a part-time basis. He did so on the theory that Local 327's recognition as the union for Systems employees was improper. Thus, since the labor contract that actually governed these employees was the Local 29 contract which required full-time employment at almost double the Local 327 contract rate, the Local 327 employees were entitled to that rate as well. The NLRB affirmed this order and sought enforcement. Both Systems and Local 327 appealed to this court asking that we reverse the Board's order, or alternatively deny enforcement of so much of the order as requires back pay.

### II.

We turn first to the question: was Systems a "successor employer" as that term is defined in the case law? If we determine that Systems became a successor to Pritchard, then Systems, as a successor, was obligated to recognize Local 29 as the representative of its employees and to negotiate with that union rather than with Local 327. In addition, Systems would become liable for the remedies prescribed by the Board.

It is difficult to define the term "successor employer"—a status which requires an enterprise to adhere to the union recognition of its predecessor. However, the authorities that have considered this issue have been virtually uniform in looking *first* to whether continuity of the work force has been maintained (work force continuity), and *second* whether the enterprise contin-

---

**3.** With respect to the Porter building, the ALJ reached a different conclusion, and held "that the allegations of unfair labor practices concerning the conduct of Systems and Local 327 with respect to the Porter Building are not proven and ought to be dismissed." (ALJ Op., p. 47.) Thus, the conduct of Systems in the Porter building is not at issue in this appeal.

ued without substantial change (enterprise continuity).[4]

### A.

■ Considering as a threshold criterion the question of work force continuity, it appears that "successor employer" status attaches only when the majority of the *employees of the former enterprise* were hired by the new employer; *Howard Johnson Co. v. Detroit Local Joint Board, Hotel & Restaurant Employees*, 417 U.S. 249, 263, 94 S.Ct. 2236, 2243, 41 L.Ed.2d 46 (1974). A slightly different formulation was advanced by the Supreme Court in *NLRB v. Burns International Security Services*, 406 U.S. 272, 281, 92 S.Ct. 1571, 1579, 32 L.Ed.2d 61 (1972), when the court stated the test as whether "a majority of the *employees hired by the new employer*" were employees of the predecessor enterprise.[5] Because *no* Pritchard employees were engaged by Systems, the difference between the two standards as to what constitutes a majority is not relevant in this case. As discussed *supra*, Systems does

not dispute that it made no efforts to hire Pritchard's employees.

Thus, for example, where one business takes over another business, but the old employees represent less than 50 percent of the new businesses' workers (and less than half of the old workers are employed in the new business), successor employer status does not attach. As one treatise has put it:

> Continuity of the work force (and thus "majority") remains a requirement for determining successorship. In no decision since *Burns* has the [National Labor Relations] Board found successorship absent a finding of majority.[6]

In this case none of the Local 29 employees of Pritchard were in fact hired by Systems. However, it is now established that the discriminatory refusal to hire predecessor employees eliminates the obligation for a majority of the employees to be present in order for the new enterprise to be deemed a "successor."[7] Thus, where the Board proves discriminatory hiring in violation of Section 8(a)(3) and 8(a)(5) as it did here, the normal requirement that a majori-

---

4. *Wiley v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *Howard Johnson Co. v. Detroit Local Joint Board, Hotel & Restaurant Employees*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987). See generally, C. Morris, The Developing Labor Law, 713–730 (BNA, 1983).

5. The Supreme Court has acknowledged the confusion created by its various formulations. In *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 46 n. 12, 107 S.Ct. 2225, 2237 n. 12, 96 L.Ed.2d 22 (1987) the Court stated:

> After *Burns*, there was some initial confusion concerning this Court's holding. It was unclear if work force continuity would turn on whether a majority of the successor's employees were those of the predecessor or on whether the successor had hired a majority of the predecessor's employees. Compare 406 U.S., at 281, 92 S.Ct., at 1579 ("a majority of the employees hired by the new employer are represented by a recently certified bargaining agent"), with id., at 278, 92 S.Ct., at 1577 ("the union had been designated bargaining agent for the employees in the unit and a majority of these employees had been hired by

Burns"). See also *Howard Johnson Co. v. Hotel Employees*, 417 U.S., at 263, 94 S.Ct., at 2244 ("successor employer hires a majority of the predecessor's employees"); *Golden State Bottling Co. v. NLRB*, 414 U.S. [168], at 184, n. 6, 94 S.Ct. [414], at 425, n. 6 [38 L.Ed.2d 388 (1973) ] (same). The Board, with the approval of the Courts of Appeals, has adopted the former interpretation. See *Spruce Up Corp.*, 209 N.L.R.B. 194, 196 (1974), enf'd, 529 F.2d 516 (CA4 1975); *United Maintenance & Mfg. Co.*, 214 N.L.R.B. 529, 532–534 (1974); *Saks & Co. v. NLRB*, 634 F.2d 681, 684–686, and nn. 2 and 3 (CA2 1980) (and cases cited therein); see also *Note, Appropriate Standards of Successor Employer Obligations under Wiley, Howard Johnson, and Burns*, 25 Wayne L.Rev. 1279, 1299 (1979).

6. C. Morris, 1 *The Developing Labor Law*, (BNA, 1983) (Supp.1989) p. 356.

7. *Scott for and on behalf of NLRB v. El Farra Enter., Inc.*, 863 F.2d 670, 675 (9th Cir.1988); *Kallmann v. NLRB*, 640 F.2d 1094 (9th Cir. 1981); *NLRB v. Foodway of El Paso*, 496 F.2d 117, 120 (5th Cir.1974); *Packing House and Indus. Services v. NLRB*, 590 F.2d 688, 696–98 (8th Cir.1978). *See generally, The Developing Labor Law, supra*, n. 6, pp. 722–25, Supp.1989 pp. 366–67.

ty of the former employees be employed in the successor enterprise does not attach.

The new employer cannot argue that a majority of the employees of his predecessor have not been employed in the new work force when the failure to employ them is a result of discriminatory, and hence illegal, hiring practices. Here, the Board found that Systems had violated the Act by recognizing and entering into a collective bargaining agreement with Local 327. This finding has not been contested by Systems.[8] Thus, absent any other factors in Systems' favor, Systems cannot now claim that because a majority of Pritchard's full-time employees did not accept employment with Systems in its contract with First Union, Systems can escape successorship status and avoid the attendant obligation to bargain with Local 29.[9]

### B.

■■■ However, for Systems to be considered a successor to Pritchard, not only must the "continuity of the work force" test be met, but Systems must as well have continued in the same business operation,

thus fulfilling the "continuity of enterprise" test. Accordingly, even where a majority of the work force of a predecessor employer is hired by the new enterprise, if the nature of the succeeding business is substantially different from the enterprise which it succeeded, the requirement to negotiate with the predecessor's union disappears. The courts and the Board have generally isolated seven distinct indicia to determine if the new industry is substantially the same as the old one. The seven criteria analyzed are:

1. Whether there has been a substantial continuity of the same business operation;

2. Whether the new employer uses the same plant or equipment;

3. Whether the same or substantially the same work force is employed;

4. Whether the same jobs exist under the same working conditions;

5. Whether the same supervisors are employed;

6. Whether the same machinery, equipment, and methods of production are used; and

---

8. In its brief on appeal, Systems stated:

> For purposes of this appeal, Systems does not contest the Board's finding that Systems violated Section 8(a)(2) of the Act by recognizing Local 327.

Systems brief p. 5, n. 3.

9. Judge Greenberg, in his dissent, takes issue with our conclusion that *Systems* must be treated as a successor employer to Pritchard. He claims that,

> Common sense should cause us to recoil from [the ALJ's] conclusion that they [the Pritchard employees] would have taken the Systems' jobs if offered. In reality there was no 'uncertainty' as to whether the Pritchard employees would have accepted Systems' terms if they had the chance, as it is obvious that the Pritchard employees would not have accepted part-time employment at less than half of their previous full-time rate. (Dissent, pp. 309–10)

He asks the question, "On what basis then are the administrative law judges' conclusions upheld?" The short answer to the dissent is: while we do not minimize the value of "common sense," we may not substitute "common sense" alone for the substantial evidence by which we review the Board's findings. Mere "intuitive-

ness" cannot be deemed to take the place of evidence or established presumptions.

Here, the record discloses *no* evidence that Systems ever offered to employ any Pritchard employees. Nor is there evidence that any Pritchard employees would have refused jobs with Systems if they had been offered. The only Pritchard employee who testified (Ronald Griffith), when asked if he would work for $3.75 per hour, *if Local 29 represented him,* answered equivocally. He stated, "I'd really have to think about that." (Bd. App. 86) He did not reject the hypothetical offer despite the dissent's characterization of such in its footnote 2. No other Pritchard employee testified that a Systems' offer would be rejected. Indeed, the record is barren of any evidence whatsoever to refute the presumption arising by virtue of Systems' discriminatory actions, that Systems should be classified as a "successor employer." *Scott for and on behalf of NLRB v. El Farra Enter., Inc.,* 863 F.2d 670, 675 (9th Cir.1988). We obviously do not hold that this is an *irrebuttable* presumption (*cf.* dissent, page 310), but rather, on the record here before us, we hold that the Board's unrebutted presumption, which declines to permit an employer to profit from its own wrongdoing and thus avoid its legal responsibilities (*see Kallmann v. NLRB,* 640 F.2d 1094, 1100 (9th Cir.1981)), has not been rebutted by Systems.

7. Whether the same product is manufactured or the same service is offered. *See Border Steel Rolling Mills, Inc.*, 204 NLRB 814, 818 (1973) (original formulation of the seven criteria); *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43, 107 S.Ct. 2225, 2236, 96 L.Ed.2d 22 (1987) (recognizing the Board's seven criteria); *American Press, Inc. v. NLRB*, 833 F.2d 621, 626 (6th Cir.1987) (application of the seven criteria); *Musikiwamba v. ESSI*, 760 F.2d 740, 745–46 (7th Cir.1985) (same); *Saks & Co. v. NLRB*, 634 F.2d 681, 689 (2d Cir.1980) (same); *United Tel. Workers, AFL–CIO v. NLRB*, 571 F.2d 665, 672 (D.C. Cir.1978) (same).

■ In particular, the seven factors which we have identified reveal that Systems must be held to have engaged in the same operation as had Pritchard. The record discloses that, although Systems employed part-time, rather than the full-time workers employed by Pritchard, Systems remained committed to the same type and nature of business as Pritchard operated and has merely substituted its part-time workers and management for Pritchard's full-time workers and management. Systems does not allege that a new technique was used or a new practice was employed or that a different product was manufactured or service offered.[10]

Systems' defense is that the nature of the work force employed is sufficiently different from that employed by Pritchard that it should not be deemed a successor employer. Systems maintains that since it hires only part-time employees and only employees who seek no career in the janitorial business, Systems cannot be deemed a "successor employer" because the difference between part-time and full-time employees constitutes a substantial difference in the enterprise. We find this argument to be meritless.

Systems may not avoid its obligation under the Act to negotiate with a properly recognized union by merely changing the hours of work by its employees while still maintaining the same nature and type of services previously provided by Pritchard. To allow a "successor employer" to escape its duty to bargain notwithstanding the continuation of the identical business—in our case, using the same technique and supplies, servicing the same customers and supplying the same product, and indeed doing so in the same buildings—would eviscerate the doctrine of "successor employer."

Systems fundamentally misunderstands the nature of being a "successor employer." In order to prevent the label, and consequent obligations of, "successor employer" from attaching, a fundamental change in the *nature* of the business enterprise must occur. It must be more than a mere restructuring of the hours[11] or conditions of employment.[12]

The First Circuit stated this principle aptly in *NLRB v. Band–Age, Inc.*, 534 F.2d 1, 3 (1st Cir.1976) when it held:

> The central question in a successorship case is whether there has been "a change of ownership not affecting the essential nature of the enterprise," if no essential change is found "the successor employer must recognize the incumbent union and deal with it as the bargaining representative." In deciding this

---

**10.** Only one of the indicia was not found in that Systems employed different supervisors than those employed by Pritchard. The second indicia, "whether the new employer uses the same plant or equipment," is inapplicable in the janitorial and maintenance business as no goods are manufactured. To the extent relevant, Systems cleaned and maintained the same buildings as Pritchard.

**11.** This is particularly so in a case like this one where Systems, in violation of the Act, did not extend offers to the Local 29 workers.

**12.** Systems' purported change in the continuity of its cleaning and maintenance enterprise can be readily distinguished from the interrupted enterprise described in the Seventh Circuit case of *In Re Chicago, Milwaukee, St. Paul & Pacific Railroad*, 658 F.2d 1149 (7th Cir.1981). That court declined to impose successor employer status on a railroad which had entered bankruptcy and ceased operations for a number of years. Upon revival, the Seventh Circuit ruled that there was no continuity of business since the business had ceased operating for a number of years.

issue the Board must examine the "totality of the circumstances."

(Emphasis added) (citations omitted).

The indicia which we have recognized lead us to conclude that Systems continued the existence of the Pritchard enterprise, and that the difference in scheduling employees on a part-time, rather than a full-time basis, did not convert a "continued enterprise" into a new or a different one because the nature of the employment remained substantially and essentially the same as the business Pritchard had conducted. Moreover, if we were to hold that a mere reduction in working hours would negate the obligations of a "successor employer" we would encourage the intentional manipulation of a work force so as to eliminate the "successor employer's" obligation to negotiate.

Therefore, applying the seven factor analysis to the instant record leads to conclude that both of the criteria leading to successorship have been satisfied, and that accordingly, Systems must be deemed a successor to Pritchard. As such, Systems became liable under the Act for its discriminatory conduct.

### III.

 Systems argues that it should not be liable for backpay to the former Pritchard employees who had been represented by Local 29. Systems contends that even had offers been made to employ the Local 29 workers, they would not have accepted employment because Systems' work involved both a reduction in hourly wages and hour worked per week.

The Board has responded by finding that Systems had an anti-union animus. It stated as the applicable standard

that where an employee's support for, or membership in, a union is shown to be a motivating factor in an employer's decision to take an adverse action against the employee, the employer, will be found to have violated the Act unless it is able to demonstrate, as an affirmative defense,

that it would have taken the adverse action even in the absence of the employee's union support or membership.

(NLRB brief, p. 20–21).

Applying that standard to Systems' conduct, the Board urges that its finding of anti-union animus is supported by substantial evidence in the record. We agree.[13]

The Board has called our attention to the fact that Systems had decided that its employees would be represented by Local 327 even before Systems had executed its contract with First Union, and even before Systems had hired any employees to staff the building. As the Board noted, the pre-recognition of Local 327 necessarily precluded the employment of the Pritchard employees who were already represented by Local 29.

In addition the record discloses a letter by Systems' president to its counsel from which the Board inferred that Systems wished to avoid recognizing and bargaining with Local 29. The letter stated in part:

It has been over a month now that we have been cleaning that building with employees who are represented by the Painters and Allied Trades Union Local 327. We have yet to hear a 'peep' from Local 29 and I think it is because they have so many problems that are solvable that they can't waste time on a no-win situation. Your help and counsel are partially responsible for our enviable position and we thank you for being in our corner.

(ALJ op. p. 26).

The Board concluded that the evidence of General Counsel's prima facie case had not been rebutted and that Systems refusal to hire the Local 29 workers was discriminatorily motivated.

The Board stated:

We also note that Systems' alleged past practice of seeking new employees through a blind advertisement that did not identify the location of the work had the effect, in this case, of preventing the

---

**13.** *See Piasecki Aircraft Corp. v. NLRB*, 280 F.2d 575, 591–92 (3d Cir.1960); *Kallmann v. NLRB*, 640 F.2d 1094, 1103 (9th Cir.1981); *Shortway*

*Suburban Lines, Inc.*, 286 NLRB No. 30, 126 LRRM 1225, 1228–29 (1987) *enf'd* 862 F.2d 309 (3d Cir.1988).

predecessor employees from learning that their jobs were to be terminated and that, if they wished to continue to work at the building, they must apply to Systems for employment. . . . We also note that the predecessor employees were not notified until just before Systems took over the contract and new employees had already been hired that their services were to be terminated. These facts amply support a prima facie case that Systems' refusal to hire the predecessor employees was discriminatorily motivated. We also agree with the judge that Systems has failed to bring forward convincing evidence to rebut the prima facie case.

*Systems Management, Inc. v. Service Employees Int.*, 292 N.L.R.B. No. 125, n. 2 (citation omitted).

Since the critical issue is one of motive, "the Board may rely on circumstantial evidence to prove such intent." *Hunter Douglas Inc. v. NLRB*, 804 F.2d 808, 815 (3d Cir.1986) (quoting *NLRB v. Scott Printing Corp.*, 612 F.2d 783, 787 (3d Cir. 1979)). Likewise, as the Supreme Court stated in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401, 103 S.Ct. 2469, 2474, 76 L.Ed.2d 667 (1983):

As we understand the Board's decisions, they have consistently held that the unfair labor practice consists of a discharge or other adverse action that is based in whole or in part on anti-union animus—or as the Board now puts it, that the employee's protected conduct was a substantial or motivating factor in the adverse action. The General Counsel has the burden of proving these elements under § 10(c). But the Board's construction of the statute permits an employer to avoid being adjudicated a violator by showing what his actions would have been [done] regardless of his forbidden motivation. It extends to the employer what the Board considers to be an af-

firmative defense but does not change or add to the elements of the unfair labor practice that the General Counsel has the burden of proving under § 10(c).

Thus, in order for Systems to sustain its defense that no anti-union animus existed, it had to prove that no Local 29 employees would have accepted employment had employment been offered. This Systems failed to do.[14] After an independent review of the record we conclude that the Board's determination that Systems' conduct was motivated by anti-union animus is supported by substantial evidence.

■ Furthermore, it is clear that to the extent that Systems argues that the burden of proof was on the Board to establish that the Local 29 employees would have taken the jobs with Systems had they been offered, that argument also fails. It is precisely because Systems did not comply with the notice and good faith bargaining requirements of the Act that the Board was prevented from ascertaining whether in fact the Local 29 workers would have taken the jobs offered by Systems at the part-time hours and wages. As this court said in *Leeds v. NLRB*, 391 F.2d 874, 880 (3d Cir.1968), "[T]he Board can hardly be said to be effectuating policies beyond the purposes of the Act by resolving the doubt against the party who violated the Act"; *Phelps Dodge v. NLRB*, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).

Since Systems did not comply with the Act's requirements which mandated that Systems offer employment to its predecessor's employees, Systems' contention that the Pritchard workers would not have taken the jobs with Systems had they been offered is without merit.

## IV.

■ Having determined that the Local 29 workers were entitled to the back-pay ordered by the Board, only one other ques-

---

**14.** Systems attempted to meet this burden by presenting evidence that none of the Local 29 employees would have taken jobs had they been offered. In particular, Systems relies heavily on the testimony of Kelly Boyd (S.A. 23–26) who stated that the Local 29 workers were interested only in full time work. The evidence Systems presented does not rebut the prima facia case of animus, failing as it did to adduce evidence of the intentions of the specific workers involved— none of whom testified that they would refuse employment by Systems.

tion remains to be answered: should we enforce the Board's order which prescribed that back-pay at the full time rate be paid to *all* workers including the Local 327 part-time employees?[15]

The Board's order specified that Local 29's rate of pay be awarded both to the Local 29 employees who were discriminated against by Systems in the hiring process, as well as to the Local 327 employees who were hired with the understanding that they would be bound by the Local 327 contract, at Local 327's rate of pay. The Board's order, in relevant part, as it pertains to back-pay, required as to the Local 29 employees that Systems:

(b) Make whole the employees formerly employed by Pritchard Services, Inc. for any loss of earnings they may have suffered due to the discrimination practiced against them in the manner described in the Remedy section of this Decision.

In regard to the Local 327 employees, the order required that Systems:

cancel any changes from the wages, rates of pay, hours of employment and benefits or other terms and conditions of employment that existed immediately before their takeover of the servicing of 300 Sixth Avenue Building and make the employees whole by remitting all wages and benefits that would have been paid, absent such changes from 16 February 1986 until it negotiates in good faith with the Union to agreement or to impasse in the manner described in the Remedy section.

Thus, pursuant to the Board's order, Systems was required to pay back wages to two different groups of workers (*i.e.*, those represented by Local 29 and those represented by Local 327) but at the contract rate established in Pritchard's agreement with Local 29.

In ordering back-pay for the Local 29 workers, the Board properly considered the facts as revealed by the record that this work force had been the victim of illegal discrimination. As such, established doctrine as interpreted and implemented by the Board requires that Systems restore these workers to the *status quo ante*. As we have stated, that "restoration" is supported both substantial evidence and precedent.[16]

The Board's brief claims that this was also the Board's intention when it ordered Systems to pay to the Local 327 employees back pay at the same rate as awarded to the Local 29 workers. The Board stated: "[T]he Board thus sought to restore the parties, to the extent practicable, to the situation that would have obtained but for Systems' unfair labor practice." (NLRB brief p. 41.)

However, we cannot agree that the Board's effort to "restore" the Local 327 employees to the situation that would have obtained but for Systems' unfair labor practice, by awarding back pay to the Local 327 employees at the Local 29 wage rate, leads to a result permissible under the Act. Although we accept the legal principle urged by the Board as it pertains to the Local 29 workers, we decline to extend it to the situation of the Local 327 workers. One significant difference exists between these two groups of employees: the Local 29 workers should have been given the opportunity to engage in good faith bargaining with Systems over the wages and hours issues. Systems' discriminatory action in declining to engage in that bargaining financially injured the Local 29 employees. As the Board stated, the Local 29 workers are entitled to compensation for that harm. Thus, an award for back-pay, for the requisite period of times, and in the amounts to be determined by the Board, is appropriate in so far as the Local 29 workers.

**15.** The rate specified by the Local 29 contract was more than $8.00 per hour, and specified full time work of 40 hours per week. The Local 327 contract specified a wage rate of $3.75 per hour for less than twenty hours of work per week.

**16.** See e.g. *St. John's General Hospital v. NLRB,* 825 F.2d 740, 746 (3d Cir.1987) ("The Board has the power to order the restoration of the status quo ante when an employer has refused to bargain").

Such is not the case for the Local 327 workers. First, there was no "situation," such as was posited by the Board, to which the Local 327 employees could be restored. The Local 327 employees had never agreed to, nor had they worked, full time hours at full time rates. Second, if anything the Local 327 employees were beneficiaries of Systems' discriminatory conduct, because the result of Systems' decision not to employ the Local 29 workers culminated in the employment of the Local 327 workers. Furthermore, Systems fully complied with its agreement with the Local 327 workers, and employed them for the designated hours and wages, which both Systems and these workers agreed upon. As a consequence, the Local 327 contract was not breached, and thus no bases exist which would entitle Local 327 employees to compensatory damages, let alone the windfall damages which would ensue from an award based on application of the Local 29 contract rate. Any award made to the Local 327 employees cannot be considered a "restoration to any *status quo ante*," as no *status quo ante* ever existed for these employees.

Thus we agree with Systems' contention that the Board's order requiring full back-pay, at the Local 29 rate, to the Local 327 part-time workers must be considered a punitive measure, and hence not enforceable.

While the Board has broad authority in "devising remedies to effectuate policies of the Act," *NLRB v. Seven–Up Bottling Co.*, 344 U.S. 344, 346, 73 S.Ct. 287, 289, 97 L.Ed. 377 (1953), and that power is a discretionary one, subject only to limited judicial review, *Fibreboard v. NLRB*, 379 U.S. 203, 216, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964), the Board's orders may not substitute punitive measures for compensatory damages. We said in *Frito–Lay v. NLRB*, 585 F.2d 62, 68 (3rd Cir.1978) "orders may not be punitive or confiscatory and must be reasonably adapted to the situation that calls for the redress" (quoting *NLRB v. Townhouse T.V. and Appliances, Inc.*, 531 F.2d 826, 830 (7th Cir.1976)). This rule has

been accepted by other courts as well; *see Armco v. NLRB*, 832 F.2d 357 (6th Cir. 1987).

As the Ninth Circuit recognized in *Kallmann v. NLRB*, 640 F.2d 1094, 1103 (9th Cir.1981):

> The function of the remedy in unfair labor cases is to restore the situation, as nearly as possible, to that which would have occurred but for the violation. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941).

As we have observed, the Board's "restoration" order in this case, because it is not compensatory, cannot be given effect by enforcement.

### V.

We will uphold the Board's order as it pertains to the Local 29 employees who Systems discriminatorily refused to hire. We will decline to enforce so much of the Board's order which mandates back-pay at the Local 29 wage rate for the workers who were members of Local 327.

While we would normally do no more than enforce those orders of the Board which are supported by substantial evidence and precedent, such as the Board's order requiring Systems to make back-pay awards to Pritchard's employees represented by Local 29, we cannot do so here. Nor can we leave the substantive details of the award, such as which workers, how much pay, and for what period of time the pay must be calculated, to the remedy proceedings of the Board, inasmuch as none of the Local 29 workers were ever actually employed by Systems. Moreover, the Board has yet to determine for what period of time such compensation should be paid.

While it is possible that the Local 29 workers would be entitled to compensation for the full term of Systems' contract with First Union, other termination dates, including bargaining to impasse,[17] are possible. It is for the Board to determine the amount of back-pay, the time period for which back-pay must be reimbursed, and

17. See *e.g., Kallmann v. NLRB*, 640 F.2d 1094, 1103 (9th Cir.1981).

the particular Local 29 workers to whom the back-pay should be awarded.

Thus in accordance with our opinion above, we will grant Systems' petition for review (at 89–3109), but only to the extent of denying back-pay to Local 327 employees; in all other respects the petition for review will be denied.

We will enforce those portions of the Board's order (at 89–3232 and 89–3233) which hold Systems and Local 327 liable for their discriminatory conduct and for Systems' obligation to award back-pay to the Local 29 workers.

We deny enforcement to so much of the Board's order which requires that Systems provide back-pay to the Local 327 employees at the Local 29 wage rate.

We also deny enforcement of so much of the Board's order as would require Systems to comply with the back-pay award to Local 29 without further specification by the Board of the amounts of back-pay, the time for which it must be paid, and the specific workers to be paid. In order to implement our decision in this latter respect, we will remand to the Board for further proceedings consistent with this opinion.

GREENBERG, Circuit Judge, dissenting:

I cannot join in the Court's opinion in this matter for the following reasons. The administrative law judge found that Systems, "had it not been for its unlawful discrimination, would have been a successor employer, having assumed the same work as Pritchard and having hired those former employees who would have formed a majority of its regularly employed new crew, exclusive of temporary employees, at a time when a reasonably representative number had been employed after an initial start-up period." This, of course, was a hypothetical holding based on a "but for" theory, as no Pritchard Local 29 employees were hired by Systems.

Unquestionably Systems had no duty to bargain with the representative of the previous work force unless it was the successor to Pritchard. As the Court recognizes, successorship will exist where there has been, despite the change in ownership, a continuity of both the work force and the enterprise itself without substantial change. Here the work force was entirely new so that ordinarily Systems would not be deemed a successor. Accordingly, the finding that the unlawful discrimination was the reason that the Pritchard work force did not continue under Systems was critical to the circumvention by the administrative law judge of the clearly established law regarding successor employers.

The administrative law judge concluded that Systems "would have offered employment to the Pritchard employees to fill urgently needed positions for experienced cleaning persons at 300 Sixth Avenue had it not been for its unlawfully discriminatory motivation of effectuating a pre-hiring recognition of Local 327 at the site ... by refusing to hire predecessor employees," a finding which we may accept. But to find successorship he had to go further and he did so by holding that "[a]ny uncertainty as to whether any of these predecessor employees would have accepted employment offered under lawful conditions must be resolved against Respondent Systems...."

But why is this so? There is no doubt but that Systems upon taking over the cleaning contract was free to offer any lawful wage rate to prospective employees, including those previously employed by Pritchard, without regard for the prior Pritchard rate. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 40, 107 S.Ct. 2225, 2234, 96 L.Ed.2d 22 (1987). In fact, the hourly wage rate Systems offered was less than half of that paid by Pritchard and was for part-time rather than full-time work as had been the situation under Pritchard.[1] Yet the administrative law judge did not explain why the Pritchard employees would have accepted jobs paying about one-fourth of what they previously

---

**1.** The old rate was close to $8.00 per hour, full time, and the new rate was $3.75, part time.

The part-time work was around four or five hours per shift.

earned. Common sense should cause us to recoil from his conclusion that they would have taken the Systems jobs if offered. In reality there was no "uncertainty" as to whether the Pritchard employees would have accepted Systems' terms if they had the chance, as it is obvious that the Pritchard employees would not have accepted part-time employment at less then half of their previous fulltime rate.

On what basis then are the administrative law judge's conclusions upheld? The Court indicates that "it is now established that the discriminatory refusal to hire predecessor employees eliminates the obligation for a majority of the employees to be present in order for the new enterprise to be deemed a 'successor.'" Thus, the Court concludes that if there is "discriminatory hiring" "the normal requirement that a majority of the former employees be employed in the successor enterprise does not attach." Majority at 302. The difficulty with this statement is that it is only tangentially related to the problem at hand. The administrative law judge's finding was not ultimately dependent on his conclusion regarding the issue of whether Systems would have offered to hire the Pritchard employees but for the discrimination. His critical finding was, in his words, that they would have "accepted employment" with Systems, a finding which the Court does not address in its discussion of successorship.

The Court then indicates that "[t]he new employer cannot argue that a majority of the employees of his predecessor have not been employed in the new work force when the failure to employ them is a result of

discriminatory, and hence illegal hiring practices." Majority at 303. I will accept this statement as true but it is of no use here as it simply restates the Court's earlier conclusion. I emphasize that the problem here is that there is absolutely no reason to conclude that if Systems had not discriminated against the Pritchard employees, they would have taken Systems' part-time jobs at less than half of their former full-time rate.

In some cases it is acceptable to infer or rebuttably presume that in the absence of discrimination, the prior employees would have continued on the job, so that if the other attributes of successorship are established, the new employer may be deemed a successor. Certainly this result might be reached on the basis of actual evidence. *See, e.g., American Press, Inc. v. NLRB,* 833 F.2d 621 (6th Cir.1987); *Kallmann v. NLRB,* 640 F.2d 1094 (9th Cir.1981). But this case is a long way from a situation in which the court may reasonably say, as did the court in *NLRB v. Foodway of El Paso,* 496 F.2d 117, 120 (5th Cir.1974), that "[i]t is manifest that but for [the successor employer's] discriminatory refusal to offer employment to [the prior employer's] employees, the Union would have continued to enjoy a majority representative status." In fact, the only way that the result in this case can be justified is by holding that if there is unlawful discrimination against the prior employees in the offering of employment, it will be irrebuttably presumed, no matter how outlandish the result, that the employees would have accepted the offer of employment if made from the new employer regardless of its terms.[2]

---

**2.** I realize that in the context of discussing whether back pay should be awarded the Pritchard employees, which is a different matter than whether Systems is a successor, the Court does indicate that Systems "had to prove that no Local 29 employees would have accepted employment had employment been offered" and "failed to do [so]." Majority at 306. In an accompanying footnote, the Court indicates that Systems failed to meet its burden because it did not "adduce evidence of the intentions of the specific workers involved—none of whom testified that they would refuse employment by Systems." As it happens, this statement is wrong, as one Pritchard employee did testify that he

would not accept the Systems position at $3.75 per hour. While the Court indicates in footnote 9, referring to the employee's later testimony, that he indicated that he would have to think about the $3.75 if Local 29 represented him, that evidence is of no help in sustaining the Board because the $3.75 had to be accepted by the old employees before Local 29 was back in the picture, as when the $3.75 was offered they could not possibly know whether Systems would become a successor to Pritchard. Thus the Court has placed the cart before the horse. Therefore, the only actual evidence in the case regarding what the employees would do refutes the holding of the Board. Accordingly, my

This is an extraordinary rule of law which predicates liability, and ultimately a remedy, where the action of the parties, even absent the wrongdoing, would have been exactly the same. This situation is analogous to that in *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), in which the Supreme Court considered a case in which there was a district court finding, affirmed by the Court of Appeals, that a school board in not renewing a teacher's contract violated his First and Fourteenth Amendment rights. Notwithstanding the constitutional violation, the Court remanded the matter "to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct" and had accordingly established a defense. *Id.* at 287, 97 S.Ct. at 576. Thus, the Court held that the employer may avoid liability in a First Amendment case which, after all, involves a core value of our society, by establishing that regardless of its wrongdoing it would have dismissed the employee.

In view of that conclusion, is it too much to require a sliver of reason to believe in a statutory labor case that the employees would have accepted jobs if offered by the employer before the consequences involved in this case are visited on the employer because of its failure to offer the jobs? The fact is that the actual holding of this case has created a remedy for the Pritchard employees where, without a doubt, the wrongdoing as to them caused them no loss. Thus, as it is the policy of the National Labor Relations Act to avoid punitive sanctions and to supply remedies rather than punishments, the Court in my view has not reached the correct result. *See Republic Steel Corp. v. NLRB*, 311 U.S. 7, 10–11, 61 S.Ct. 77, 79, 85 L.Ed. 6 (1940);

*Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1019 (3d Cir.), *cert. denied*, 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977). In the circumstances, I am constrained to dissent.

common sense is consistent with the record. In any event, I cannot believe that anyone would think that after the fact testimony by employees that they would have taken jobs paying about one-fourth of their previous wages if they had been offered, could possibly be regarded as reliable, since at the time of their testimony the employees would be aware that they would not

have to take the reduced-pay part-time position, but instead may receive back pay at a full-time rate for a period in which they did not work. Clearly, the only possible inference that can be drawn from the actual facts here is that the Pritchard employees would not have accepted Systems' terms if offered.